[Cite as *Wagner v. Holland*, 2016-Ohio-5028.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| KRISTA WAGNER | : | | JUDGES: |
| | : | | Hon. Sheila G. Farmer, P.J. |
| Petitioner - Appellant | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| KYLE HOLLAND | : | | Case No. 15-CA-56 |
| | : | | |
| Respondent- Appellee | : | | O P I N I O N |

CHARACTER OF PROCEEDING:           Appeal from the Fairfield County
                                   Court of Common Pleas, Case No.
                                   15 CP 22

JUDGMENT:                          Affirmed

DATE OF JUDGMENT:                  July 18, 2016

APPEARANCES:

For Petitioner-Appellant                For Respondent-Appellee

ANGELA J. SEIMER                        JOSEPH M. HEGEDUS
124 West Main Street, Suite 201         Ohio Patrolmen's Benevolent Association
Lancaster, Ohio 43130                   92 Northwoods Blvd., Ste. B-2
                                        Columbus, Ohio 43235

*Baldwin, J.*

{¶1} Petitioner-appellant Krista Wagner appeals from the October 8, 2015 Judgment Entry of the Fairfield County Court of Common Pleas granting respondent-appellee Kyle Holland's Motion to Dismiss and denying petitioner-appellant's Petition for Civil Stalking Protection Order.

STATEMENT OF THE FACTS AND CASE

{¶2} On September 2, 2015 appellant Krista Wagner filed a Petition for Civil Stalking Protection Order pursuant to R.C. 2903.214 against appellee Kyle Holland. An ex parte hearing was held the same day and an Ex Parte Civil Stalking Protection Order was granted.

{¶3} An oral hearing on the Petition was held on October 6, 2015. At the hearing, appellant testified that she was married to Eric Wagner, a peace officer, and that in the past, she had a friendship with appellee, also a peace officer that turned into a romantic relationship in approximately May of 2015. The two met because appellant and appellee's wife were in the same police wives' group and became friendly with one another. Appellant met appellee in March/April of 2015 when she stopped at appellee's home so that her children could use the restroom.

{¶4} Appellant testified that shortly after she met appellee, he sent her "innocent" messages on Facebook. Transcript at 13. After appellant's relationship with appellee changed into a physical relationship, appellee started texting appellant all of the time and if she did not respond fast enough, "he would text me over and over and over and over again, and he would call sometimes 15, 16, 17 times." Transcript at 14. Appellant further testified that she told appellant to stop and that he threatened to ruin her life. Appellant

also testified that appellee threatened to ruin her marriage, told her that he was going to try to get her friends in trouble and told her that he was going to ruin her husband's job. Appellee also threatened to harm himself. The following testimony was adduced when appellant was asked if she believed appellee's threats to harm himself:

**{¶5}** A: Yes, because these happened often. And there was a night in this timeframe as well where he called me from the side of the road and told me that he had a - - and texted me and told me that he had a gun to his neck and was one centimeter away from pulling the trigger.

**{¶6}** Q: How did that make you feel?

**{¶7}** A: I was petrified. And he told me it would be my fault.

**{¶8}** Transcript at 27.

**{¶9}** According to appellant, appellee threatened to kill her in person sometime between June 22 and July of 2015. At the time, the two were in appellee's car. According to appellant, when she asked appellee, who had locked the car doors, where they were going, he told her "that he was taking me to a warehouse to meet someone where he was going to kill me and bury my body and nobody would find me." Transcript at 30. Appellant believed appellee and testified that she believed that he was capable of following through with his threats of physically harming her, of attempting to destroy her marriage, and of affecting her husband's job. Appellant testified as follows when asked how appellee's actions affected her:

A: Well, I can't go take my trash out without being afraid to go to my garage. I'm afraid of the corn field that's across the street from my house because I don't ever know if there's somebody there. I won't even go get

my mail.  I can't sleep.  I stay up all night 'till 2:00, 3:00, 4:00 in the morning until I'm so tired that I pass out.  I sleep with every single light in my house on.

My kids, I make them have lights in their rooms, so that if I have to go in their room, I won't struggle to find them.  I moved the gun from the TV stand in the left corner of my room to the closet next to my bed.  That way, if he comes into my house, I can get the gun without having to cross the doorway.  Every time someone's behind me, I'm afraid it's him following me.

When I'm at work - - I was at work the other day and there was somebody in the parking lot, and I didn't know who it was, and I was petrified to go inside.  And I went inside and another lady followed right after me.  And I asked her if there was still a man in the parking lot, and she said there were two. And the guys came up and rang the doorbell and I had to go hide in the other area of the building because I was so scared.

**{¶10}** Transcript at 37-38.

**{¶11}** On cross-examination, appellant testified that in June of 2015, she told appellee that she had missed her period. She testified that that she had scheduled an appointment with her OB/GYN and that if she was pregnant, the child was appellee's. Appellant admitted that she never changed her cell phone number and still had the same Facebook page.   At the hearing, appellant testified that appellee never physically assaulted her and that the last time she had contact with appellee electronically by text, by phone, by e-mail or in person was the beginning of August of 2015. Appellant also testified that during the period from May of 2015 through the beginning of June of 2015,

she stopped by appellee's house when his wife was not there a couple of times a week. She testified that the last time she was intimate with appellee was in or about mid-July of 2015 and that her last contact with appellee was in early August of 2015. After approximately July 10 and sometime in August, "[t]here was probably several weeks, if not a month, where we didn't talk." Transcript at 64. During such timeframe, appellant did not see appellee.

**{¶12}** After the incident in appellee's car the end of June of 2015, appellant reported the incident to her husband's former supervisor. Appellant decided not to file a formal complaint because she was "too scared"' because of the threats. Transcript at 69. Appellant testified that while, on her application for an ex parte order, she had indicated that she had been in counseling, she had been in counseling since she was 19 years old for anxiety. Appellant testified that her anxiety got really bad the last year because of the stress she was under. Appellant also testified that she e-mailed appellee on approximately August 18th to meet with her so that she could record their conversation in order to support her allegations against appellee, appellee ignored her request. Around the same time, appellant began sending Facebook messages to appellee's wife disclosing her intimate relationship with appellee. Appellee's wife went to the Lancaster Police Department on September 1, 2015 and filed an incident report against appellant alleging harassment. The next day, appellant filed her ex parte request for the protection order.

**{¶13}** Subsequently, on recross-examination, appellant agreed that she had notified Sergeant Castle, her husband's former supervisor, at some point in June of 2015 that she was having problems with appellee, but that she continued having intimate

sexual relations with appellee in July. On redirect, she testified that she did so because appellee threatened to ruin her life and she was trying to make him happy.

{¶14} Copies of the text messages were admitted as exhibits.

{¶15} At the hearing, Eric Wagner, appellant's husband, testified that he was a police officer with the City of Pickerington. Wagner testified that appellee sent him a text on August 17, 2015 stating that appellant had texted him and asked him to meet her at a hotel. According to Wagner, at the time, appellant was in bed with him. Wagner did not respond to such test. Wagner further testified that shortly after, appellee sent him a text stating that "him and his wife and my wife were arguing and that it needed to stop before we both lost our jobs." Transcript at 102. Wagner did not respond.

{¶16} Wagner also testified that appellee made accusations against appellant in an attempt to cause the appellant and Wagner to fight and that appellee had made threats regarding Wagner's job. According to Wagner, appellee started a rumor at work that Wagner was having an affair with another employee and threatened to go to Pickerington and start rumors against Wagner. When asked by the court, Wagner testified that he had not had any contact with appellee at all since approximately August 17, 2015.

{¶17} On cross-examination, Wagner testified that on August 18, 2015, he texted appellee to leave him and his family alone and that appellee had left him alone since.

{¶18} The final witness to testify at the hearing was Shawn Meloy, a deputy sheriff canine handler with Fairfield County who is friends with appellant and knows appellee. Meloy testified that appellant made him aware of her relationship with appellee and that she felt threatened and uncomfortable by her relationship with appellee. He further testified that appellant was "very, very fearful" of appellee. Transcript at 112. On cross-

examination, Meloy testified that he did not personally witness appellee physically harming appellant or threatening her in any way other than the text messages.

{¶19} At the conclusion of the testimony, appellee made an oral motion to dismiss because there had been no pattern of conduct proven proximate in time to the filing of the Civil Stalking Protection Order and because there was no evidence of physical harm. The trial court granted the motion, finding that there was not "an immediate and present danger." Transcript at 118. The trial court found that appellant had been "equally culpable in sending text messages going the other way, encouraging the dust storm to continue just as much as the other way." Transcript at 119.  The trial court's decision was memorialized in a Judgment Entry filed on October 8, 2015.

{¶20} Appellant now raises the following assignments of error on appeal:

{¶21} THE TRIAL COURT ERRED IN FAILING TO ORDER A CIVIL PROTECTION ORDER PURSUANT TO O.R.C. 2903.214.

{¶22} THE TRIAL COURT ERRED IN DISMISSING THE PETITION FOR CIVIL STALKING PROTECTION ORDER BASED UPON A FINDING OF LACK OF IMMEDIATE AND PRESENT DANGER AND THAT THE ORDER WAS NOT NECESSARY TO PROTECT THE PETITION (SIC).

{¶23} THE TRIAL COURT ABUSED ITS DISCRETION IN DISMISSING THE PETITION FOR CIVIL STALKING PROTECTION ORDER AND THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I, II, III

{¶24} Appellant, in her three assignments of error, argues that the trial court erred in dismissing her Petition for Civil Stalking Protection Order pursuant to R.C. 2903.214.

**{¶25}** R.C. 2903.214 governs the filing of a petition for a civil stalking protection order. R.C. 2903.214(C) provides: "A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member by filing a petition with the court." To be entitled to a civil stalking protection order, the petitioner must show by a preponderance of the evidence that the respondent engaged in menacing by stalking, a violation of R.C. 2903.211, against the person seeking the order. See *Tumblin v. Jackson,* 5th Dist. Coshocton No. 06CA002, 2006–Ohio–3270, ¶ 17. R.C. section 2903.211 defines "menacing by stalking" as follows:

**{¶26}** "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211 (D)(2) states as follows:

**{¶27}** (2) "Mental distress" means any of the following:

**{¶28}** (a) Any mental illness or condition that involves some temporary substantial incapacity;

**{¶29}** (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

**{¶30}** R.C. 2903.211(D)(1) defines "pattern of conduct" as two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of

conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." *State v. Scruggs,* 136 Ohio App.3d 631, 634, 737 N.E.2d 574 (2nd Dist.2000). One incident is insufficient to establish a "pattern of conduct." *Id.* The statute does not define the term "closely related in time," but case law suggests the trier of fact should consider the evidence in the context of all circumstances of the case. *Middletown v. Jones,* 167 Ohio App.3d 679, 856 N.E.2d 1003, 2006–Ohio–3465, ¶ 10 (12th Dist.). Trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *Guthrie v. Long,* 10th Dist. No. 04AP913, 2005–Ohio–1541, ¶ 12.

{¶31} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Olenik v. Huff,* 5th Dist. Ashland No. 02–COA–058, 2003–Ohio–4621, ¶ 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶32} We further note that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 1993-Ohio-9, 614 N.E.2d 742. The underlying rationale for giving deference to the findings of the trial court rests

with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶33}** The trial court, in the case sub judice, found that the pattern of conduct was not proximate in time to the filing of the petition and that there was not "an immediate and present danger." Transcript at 118. There was testimony at the hearing that, from August 18, 2015 until appellant filed her petition on September 2, 2015, there was no contact between the parties. Appellant did not file her petition until after appellee's wife filed a harassment complaint against her on September 1, 2015. As of the date of the October 6, 2015 hearing, there had been no contact.

**{¶34}** Moreover, appellant, at the hearing, testified that she had been intimate with appellee for the last time on approximately July 10, 2015 and that the last time she had contact with appellee electronically or in person was the beginning of August of 2015. Appellant made an attempt to initiate contact with appellee on either August 18, 2015 or August 19, 2015 in an attempt to record their conversations. Around the same time, appellant sent appellee's wife a Facebook message telling her that the two had had a relationship. Appellant testified that she never changed her cell phone number and still had the same Facebook page. Moreover, as noted by the trial court, appellant "has been equally culpable in sending text messages going the other way,…" Transcript at 119.

**{¶35}** Based on the foregoing, we find that the trial court did not abuse its discretion in dismissing appellant's petition because the trial court's decision was not arbitrary, unconscionable or unreasonable. We further find that the trial court's decision

is not against the manifest weight of the evidence. The trial court, as trier of fact, was in the best position to assess appellant's credibility.

{¶36} Appellant's three assignments of error are, therefore, overruled.

{¶37} Accordingly, the judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Baldwin, J.

Farmer, P.J. and

Wise, J. concur.