[Cite as *Spahr v. Martin*, 2019-Ohio-962.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JORDAN SPAHR | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Petitioner-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JAMES MARTIN | : | Case No. 18-CA-42 |
| | : | |
| Respondent-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Case No. 2017CV00775


JUDGMENT:    Reversed


DATE OF JUDGMENT:    March 18, 2019


APPEARANCES:

For Petitioner-Appellee              For Respondent-Appellant

JORDAN SPAHR                   JACK L. MOSER
187 South Kasson Street          109 West Johnstown Road
Johnstown, OH  43031            Gahana, OH  43230

*Wise, Earle, J.*

{¶ 1}   Respondent-Appellant, James Martin, appeals the April 25, 2018 judgment entry of the Court of Common Pleas of Licking County, Ohio, denying his objections and issuing a civil sexually oriented offense protection order to Petitioner-Appellee, Jordan Spahr.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellee worked in the meat department of Kroger.  Appellant was one of her supervisors.  On July 20, 2017, appellee filed a petition for a civil sexually oriented offense protection order against appellant.  Appellee alleged appellant was sexually harassing her and acted inappropriately.  Appellee is 20 years old and appellant is approximately 45.

{¶ 3}   A hearing before a magistrate was held on September 20, 2017.  By order filed September 27, 2017, the magistrate found by a preponderance of the evidence that appellee is in danger of or has been the victim of a sexually oriented offense as defined in R.C. 2950.01, committed by appellant.  The magistrate issued a civil sexually oriented offense protection order to appellee, in effect for two years.  The trial court adopted the magistrate's decision on same date.

{¶ 4}   On October 10, 2017, and February 20, 2018, appellant filed objections and supplemental objections, respectively.  Appellant claimed R.C. 2903.214, the protection order statute, was vague and ambiguous and open to arbitrary enforcement, the statute refers to R.C. 2950.01 which provides a fourteen count definition of a "sexually oriented offense," there was insufficient evidence that appellant committed any offense that could

be construed as a sexually oriented offense, and the record did not support the findings of fact. By judgment entry filed April 25, 2018, the trial court denied the objections.

{¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT COMMITTED AN ACT OF SEXUAL IMPOSITION BASED SOLELY AND ONLY ON THE UNCORROBORATED TESTIMONY OF APPELLEE."

II

{¶ 7} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT COMMITTED AN ACT OF SEXUAL IMPOSITION PURSUANT TO RC 2907.06(A)(1), AND THE COURT'S ISSUANCE OF A CPO IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

III

{¶ 8} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT COMMITTED AN ACT OF SEXUAL IMPOSITION PURSUANT TO RC 2907.06(A)(2), AND THE COURT'S ISSUANCE OF A CPO IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶ 9} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT HAD ENGAGED IN CONDUCT THAT INCLUDED SEXUAL HARASSMENT."

V

{¶ 10} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT A CIVIL PROTECTION ORDER WAS NECESSARY IN THIS CASE."

VI

{¶ 11} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S OBJECTIONS AND IMPROPERLY MODIFYING THE MAGISTRATE'S DECISION."

II, III,

{¶ 12} In his second and third assignments of error, appellant claims the trial court abused its discretion in finding he committed an act of sexual imposition as the evidence was insufficient to support such a finding, and the issuance of the order is against the manifest weight of the evidence.  We agree.

{¶ 13} The decision whether to grant a civil protection order lies within a trial court's sound discretion.  *Bucksbaum v. Mitchell,* 5th Dist. Richland No. 2003-CA-0070, 2004-Ohio-2233.  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 14} Sufficiency of the evidence "is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law."  *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 15} "While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion."  *State v. Bowden,*

8th Dist. Cuyahoga No. 92266, 2009-Ohio-3595, ¶ 13.  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  *See also, State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.  In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley* at ¶ 21.

{¶ 16} R.C. 2903.214 governs protection orders. Subsection (C)(1) states the following in part:

(C) A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court.  The petition shall contain or state all of the following:

(1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order or committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation.

{¶ 17} In order to be granted a civil sexually oriented offense protection order, petitioner must show, by a preponderance of the evidence, that the respondent committed a sexually oriented offense. *Lloyd v. Thornsbery,* 11th Dist. Portage No. 2017-P-0029, 2018-Ohio-2893, ¶ 9; *Weismuller v. Polston,* 12th Dist. Brown No. CA 2011-06-014, 2012-Ohio-1476, ¶ 18. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Black's Law Dictionary* 1182 (6th Ed.1990).

{¶ 18} Under R.C. 2903.214(A)(5), a " '[s]exually oriented offense' has the same meaning as in section 2950.01 of the Revised Code." R.C. 2950.01(A) lists fourteen different types of conduct that constitute a sexually oriented offense. Pertinent to this case is subsection (A)(1) which states a sexually oriented offense "means any of the following violations or offenses committed by a person, regardless of the person's age: (1) A violation of section 2907.02, 2907.03, 2907.05, 2907.06, 2907.07, 2907.08, 2907.21, 2907.22, 2907.32, 2907.321, 2907.322, or 2907.323 of the Revised Code." The trial court found appellant violated R.C. 2907.06, sexual imposition, which states the following in pertinent part:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

(2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.

{¶ 19} " 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B).

{¶ 20} Consequently, we must determine whether, viewing the evidence in a light most favorable to appellee, a reasonable trier of fact could find that she demonstrated by a preponderance of the evidence that a civil protection order should issue.

{¶ 21} Nine people testified during the hearing before the magistrate.  Appellee presented the testimony of four witnesses, plus her own testimony.  She represented herself.

{¶ 22} Appellee first called Sunday Mourn, a Kroger employee.  Ms. Mourn testified appellant was appellee's supervisor in the meat department at Kroger.  T. at 9.  Appellant would often ask Ms. Mourn what to do about appellee because she was not doing her job properly.  *Id.*  Ms. Mourn testified appellant would discuss his personal life and his wife with her "which made me uncomfortable but I'm fifty some years old so, you know what I mean, but yeah that's what he would do to me."  T. at 9-10.

{¶ 23} Next, appellee called Debra MacDonald, a Kroger employee. Ms. MacDonald testified to seeing appellee "upset on a particular day," but was not a witness to what caused her to be upset. T. at 17. Apparently appellant was "harassing" appellee because he tried to give her gift cards she did not want. T. at 17, 20.

{¶ 24} Appellee then called Craig Neil, store manager of Kroger. Mr. Neil testified on July 5th, he was notified of an incident between appellant and appellee. T. at 22. He immediately spoke to appellee and she accused appellant of saying inappropriate things to her "such as he mentioned, hey have you ever taken a roofie, items along that line and then he had offered her gift cards which she declined." *Id.* Appellee complained of things that only happened at work. T. at 23. During the conversation, she was "very upset." *Id.* Mr. Neil asked appellee if she ever told appellant that he was making her uncomfortable and she said, "[n]o." T. at 24. Mr. Neil testified he has had "no incidents or no issues between the both of them since then." *Id.*

{¶ 25} Next, appellee called Lisa Johnson, a Kroger employee. Appellee asked her if appellant "ever try to be more with you than just friends" to which Ms. Johnson stated, "[y]es, but I'm a grown older person. So I guess I knew how to draw lines that if I would have been 18, 19, 20 years old I couldn't have done for myself. There's no doubt in my mind that you've been put in a position that you shouldn't have been put in in your work place." T. at 37.

{¶ 26} Appellee then took the stand. She testified after she started working in the meat department, appellant "opened up to me about his marriage problems" and she would listen "because you know that's what I do for people." T. at 45. On at least five occasions he asked her to have an affair with him, and he told her he would think of her

while he was having sex with his wife.　T. at 46.　She never told him she was uncomfortable; she "tried to brush it off" and "thought like I can just handle this myself and like it's not going to happen and I can protect myself."　*Id.*　Appellee stated on one occasion, appellant came over to her home and brought her some whiskey.　T. at 49. She drank it and then "we went upstairs and um, the only thing happened is he pulled my pants down and then I started throwing up everywhere.　And then there was just that and that incident."　*Id.*　Appellant gave appellee gift cards, but she gave them back to him, telling him she did not want them.　*Id.*　Appellee stated appellant would text her all the time, but he made her delete the messages.　T. at 52.　She could not remember what the texts said, but "he was like controlling and I remember reading it and I was really upset it was nothing to do about work it was about how I lead guys on and mess with guys something like - - it was like so inappropriate and I was upset cause it was not true at all." *Id.*　She also testified one time, she and appellant were in the conference room at work and appellant was showing her something on the computer.　T. at 53.　Appellant "put his hand on my lap and was like see you need to release that tension."　*Id.*　Appellee interpreted that as needing to have sex with him, an older, more experienced man.　*Id.* Appellee then changed "lap" to "leg," "I remember that he put his hand on my leg."　*Id.* Appellee stated appellant told her "we can just make this a sex thing and nobody ever has to know."　T. at 54.

{¶ 27} On cross-examination, when appellant's counsel questioned appellee about the incident where appellant "came upstairs and put his hands in your lap - -," appellee corrected him and stated, "[h]is hand on my leg."　T. at 57-58.　She did not tell anyone about the incident.　T. at 58*.*　Nor did she tell anyone about the whiskey incident.　*Id.*

{¶ 28} At the conclusion of appellee's case, appellant moved the magistrate to deny the protection order because "there's not sufficient evidence for any kind of a restraining order any way shape or form.  She doesn't show that she's in harm, or fear of harm, she hasn't testified to any of that."  T. at 67-68.  The magistrate denied the motion, stating, "she filed the Sexual Oriented Protection Order so there's enough at this point to go forward."  T. at 68.

{¶ 29} In granting the civil sexually oriented offense protection order to appellee, the magistrate found by a preponderance of the evidence that appellee is in danger of or has been the victim of a sexually oriented offense as defined in R.C. 2950.01, committed by appellant, after making the following findings of fact:

> Petitioner and respondent have worked together at Kroger and respondent supervised her work in the meat department.  They became friendly and respondent took it farther and asked her to have an affair.  He made comments regarding sex, sent her texts and visited her outside of work, and made her uncomfortable.  She wants no further contact by him or his family.

{¶ 30} The magistrate's findings clearly did not include any findings of sexual contact of appellee by appellant.

{¶ 31} Appellant filed objections, arguing in part there was insufficient evidence that he committed a sexually oriented offense by a preponderance of the evidence.  In

denying appellant's objections, the trial court stated the following in its judgment entry filed April 25, 2018:

> However, petitioner testified about two incidents in which respondent could be found to have committed a sexually oriented offense. She testified about an incident in which respondent brought a bottle of whiskey to her home. (Transcript at 49.) She stated she was drinking whiskey and respondent pulled her pants down. *Id.* She stated she then began vomiting. *Id.* She further testified that on another occasion respondent had attempted to convince her to have sex with him where he put his hand on her lap. *Id.* at 53-54.

{¶ 32} The trial court then set forth the language defining sexual imposition and sexual contact, and stated the following:

> The Court disagrees that there was no evidence offered that respondent had committed a sexually oriented offense. Rather, the Magistrate assessed petitioner's allegations to be credible in determining there was a preponderance of evidence that respondent had committed an offense. This determination was supported by petitioner's testimony that respondent had attempted to get her to have an extra-marital affair with him and had engaged in other conduct that included sexual harassment. Respondent is married, twenty-six years older than petitioner, and was in a

supervisory position over her at the parties' workplace when the conduct occurred. Petitioner testified that she told petitioner she would not have an affair with him. The Magistrate is in a better position to determine the credibility of the witnesses, and the Court will not overrule the Magistrate's finding petitioner had met her burden by a preponderance of the evidence.

{¶ 33} In reviewing the evidence presented, we disagree with the trial court's conclusions. Accepting all of appellee's testimony as true, it does not rise to the level of a sexual imposition offense by a preponderance of the evidence committed by appellant. Sexual imposition requires sexual contact. Appellee testified to two incidents of unwanted contact: 1) appellant pulling down her pants, and 2) placing his hand on her leg. There is no testimony as to where on her leg. There is no testimony of appellant touching an erogenous zone for the purpose of sexually arousing or gratifying either of them as defined in R.C. 2907.01(B); therefore, there is no testimony of sexual contact. Appellee did not meet her burden to show, by a preponderance of the evidence, that appellant committed a sexually oriented offense under R.C. 2950.01(A).

{¶ 34} Upon review, we find insufficient evidence to issue the civil sexually oriented offense protection order sub judice.

{¶ 35} Assignments of Error II and III are granted.

I, IV, V, VI

{¶ 36} Based upon our decision in Assignments of Error II and III, these assignments are rendered moot.

{¶ 37} The order of protection by the Court of Common Pleas of Licking County, Ohio is hereby reversed.

By Wise, Earle. J.,

Gwin, P.J. and

Baldwin, J. concur.

EEW/db 222