[Cite as *Tucker v. Uhl*, 2023-Ohio-3680.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| RIAN TUCKER, | : | |
| Appellant, | : | CASE NO. CA2023-05-052 |
| | : | O P I N I O N |
| - vs - | | 10/10/2023 |
| | : | |
| NATHAN UHL, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CP 2023 01 0019

Blake P. Somers, LLC, and Sierra D. Causey, for appellant.

Wayne Staton Co., LPA, and Wayne C. Staton, for appellee.

**S. POWELL, P.J.**

{¶ 1} Appellant, Rian Tucker, appeals the decision of the Butler County Court of Common Pleas denying Tucker's petition for a civil sexually oriented offense protection order against appellee, Nathan Uhl.[1] For the reasons outlined below, we affirm.

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

**The Parties**

{¶ 2} Prior to this case being initiated, Tucker was a senior at Miami University located in Oxford, Butler County, Ohio, whereas Uhl was employed as a part-time yoga instructor at the Miami University campus fitness center who taught a single, one-hour yoga class each week. Tucker is a biological female who the record indicates is currently taking medication to help the transition to be a male. However, although transitioning, Tucker's body is still equipped with female anatomy. This includes Tucker's body having breasts, a vagina, and a clitoris. Tucker uses a "binder" to flatten the breasts to the body to minimize their appearance. "[A] 'binder' is a piece of clothing used by individuals to 'bind' their breasts down." *Gere v. United States*, United States Air Force Court of Criminal Appeals, Misc. Dkt. No. 2020-06, 2021 CCA LEXIS 10, *4, fn. 5 (Jan. 12, 2021).

{¶ 3} Prior to their meeting, Tucker and Uhl messaged on Grindr and Snapchat for approximately one hour. "Grindr is a location-based social networking and online dating application targeted towards members of the gay, bisexual, transgender, and queer community." *Read v. State*, Md.App. No. 1051, 2023 Md.App. LEXIS 472, *2, fn.1 (July 18, 2023). "Snapchat is a social media platform that allows participants to send pictures and text messages to each other." *Hamilton v. Combs*, 12th Dist. Butler No. CA2018-02-026, 2019-Ohio-190, ¶ 2, fn. 1, citing *State v. Hunter*, 11th Dist. Lake No. 2017-L-081, 2018-Ohio-5325, ¶ 2. "'[O]ne of its core concepts [is] that any pictures, videos or messages sent between users are only available for a short time before they are deleted or otherwise become inaccessible.'" *State v. Jewell*, 12th Dist. Warren No. CA2021-09-080, 2022-Ohio-2727, ¶ 3, fn. 1, quoting *Bollinger v. Ohio Dept. of Edn.*, 3d Dist. Marion No. 9-18-07, 2018-Ohio-3714, ¶ 5, fn. 2.

{¶ 4} There is no dispute that, outside of this brief period of social media messaging, Tucker and Uhl did not know each other and had never seen or encountered each other

before exchanging messages on Grindr and Snapchat. The record indicates that this includes Tucker and Uhl never meeting or interacting with each other while on the Miami University campus. There is also no dispute that, following their brief period of social media messaging, Tucker and Uhl agreed to meet at Tucker's apartment to engage in a consensual and negotiated sexual encounter. There is further no dispute Uhl has since been fired from his position as a part-time yoga instructor on the Miami University campus and is no longer employed by Miami University in any capacity.

**Facts and Procedural History**

{¶ 5} On January 11, 2023, Tucker filed a petition for a civil sexually oriented offense protection order against Uhl. Tucker filed the petition in accordance with R.C. 2903.214(C)(1). Pursuant to that statute, a person may seek a civil sexually oriented offense protection order for himself or herself by filing a petition with the court of common pleas in the county in which the person to be protected resides that either contains or states:

> [a]n allegation that the respondent is eighteen years of age or older and * * * committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation[.]

The petitioner must also make "[a] request for relief under this section." R.C. 2903.214(C)(3). For purposes of this section, the phrase "sexually oriented offense" has the same meaning as in R.C. 2950.01. R.C. 2903.214(A)(6). R.C. 2950.01 defines "sexually oriented offense" to include the offense of sexual imposition in violation of R.C. 2907.06.

{¶ 6} To support the petition, Tucker alleged that Uhl had committed a sexual assault during their sexual encounter approximately ten days earlier on the evening of January 1, 2023. Because of this alleged sexual assault, Tucker requested the trial court direct Uhl not to enter onto the Miami University campus. This included the Miami University

campus fitness center where Uhl previously worked part-time as a yoga instructor. Upon receiving Tucker's petition, the trial court granted Tucker a temporary ex parte civil sexually oriented offense protection order against Uhl. This was done in accordance with R.C. 2903.214(D)(1). After granting Tucker this temporary ex parte order, the trial court then scheduled the matter for a full hearing to take place on January 25, 2023.

{¶ 7} On January 25, 2023, the parties appeared for the previously scheduled full hearing. However, upon the opening of this hearing, Uhl's counsel sought clarification of the allegations Tucker had levied against his client. Uhl's attorney made this request after notifying the trial court that the "additional page" Tucker claimed to have attached to the petition setting forth the allegations against Uhl had apparently been omitted from that filing. Tucker, who was at that time appearing pro se, responded that any such omission was an accident and thereafter provided a copy of that missing page to Uhl and Uhl's attorney. The trial court accepted Tucker's explanation and admitted the missing page as a "supplement" to Tucker's petition, within which Tucker alleged, in pertinent part, the following:[2]

> The respondent, Nathan Uhl, sexually assaulted me around 8pm-10pm the night of January 1st, 2023. I met Uhl on Grindr which is where we agreed to meet up on. I then added him on Snapchat. I invited Uhl over to my apartment. Once Uhl got to my apartment, we went to my room. We smoked cannabis then started making out. I then went down on him and began giving oral sex. We discussed my nipples and breast tissue and how I was not comfortable with him touching them. He explained how he was into nipples. We continued making out and he then began rubbing his penis against my dick. He then gave me head and sucked on my dick. He then went back to grinding against my dick with his penis. Sometime [later] he lifted my binder up and sucked on my right nipple. He then continued grinding against me. He then slipped his dick into my vagina and began penetrating me. I froze and was not responding. After a while he stopped, asked if I was okay. I then told him "I wanna say yes but no" and then asked him to leave.

---

2. We note that within this document Tucker refers to what would otherwise be considered the clitoris as the "dick."

Tucker concluded by stating, "[p]revious to him coming over I told him he was not to vaginally penetrate me."  The full hearing on Tucker's petition was thereafter continued to February 10, 2023, at Tucker's request, so that Tucker could retain counsel.

{¶ 8}   On February 10, 2023, a full hearing on Tucker's petition went forward.  A trial court magistrate presided over those proceedings.  This included the magistrate hearing testimony from both Tucker and Uhl.  The record, however, does not contain a copy of the transcript of this hearing.

{¶ 9}   On February 15, 2023, the magistrate issued a detailed decision terminating the temporary ex parte order it had previously awarded to Tucker and denying and dismissing Tucker's petition for a protection order against Uhl.  In so doing, the magistrate initially explained that, although faced with "two conflicting stories," it had found Tucker's testimony "more credible and consistent" than the testimony offered by Uhl.  The magistrate noted that it had made this credibility determination based on its own observations of Tucker.  The magistrate noted within its decision that these observations had convinced it that Tucker was "firm in his convictions," and that Tucker "would not have consented, and in fact did not consent, to the specific acts" alleged in the petition.  The magistrate therefore concluded that, based on Tucker's testimony, it found "by a preponderance of the evidence" that Uhl "had engaged in conduct described in the sexual imposition statute, which constitutes a sexually oriented offense for purposes of a protection order" under R.C. 2903.214(C)(1).

{¶ 10} However, although finding Uhl had committed a sexually oriented offense against Tucker by a preponderance of evidence, the magistrate nevertheless determined that it would not be granting Tucker a protection order against Uhl.  This is because, according to the magistrate, there was nothing in the record to indicate Tucker was in need of any type of protection from Uhl.  In so holding, the magistrate noted its disagreement with

Tucker's assertion that Uhl's commission of a sexually oriented offense, standing alone, was sufficient to support the issuance of such an order. The magistrate instead determined that:

> Although the Court has found [Uhl] to have committed a sexually oriented offense by a preponderance of the evidence, it cannot find by a preponderance of the evidence that a protection order is necessary for [Tucker's] ongoing protection from future offenses. The one and only encounter between [Tucker] and [Uhl] took place in the context of an intentional, sought out, sexual rendezvous through a web platform designed to promote such relationships. There was no evidence presented that [Uhl] is attempting to make contact with [Tucker], or that [Uhl] continues to seek opportunity for further sexual contact to occur. In fact, [Tucker's] only stated concern at trial was that [Tucker] might see [Uhl] while both were on the Miami University campus.

{¶ 11} The magistrate also noted that, while Tucker had testified about being "fearful, generally," Tucker never "specified the fear was of another sexual assault." This is in addition to the trial court noting that Tucker had never explained how "simply seeing" Uhl on the Miami University campus had the potential of resulting in another sexual assault. The magistrate thereafter concluded by stating:

> The necessity of a protection order is required for one to be issued. The Court does not find, by a preponderance of the evidence, that an order is necessary for [Tucker's] protection. As set forth, above, the purpose of protection order proceedings are not to address past harm, but rather to prevent harm in the future. The Court cannot find that future harm will result if an order is not issued. Therefore, the temporary, *ex parte* order is terminated and the petition is denied and dismissed.

(Emphasis sic.)

{¶ 12} Both Tucker and Uhl filed objections to the magistrate's decision. The trial court held a hearing on those objections on April 12, 2023.[3] The following week, on April

---

3. Unlike with the full hearing held on February 10, 2023, the record does contain a copy of the transcript of the objection hearing held on April 12, 2023.

17, 2023, the trial court issued an entry overruling the objections to the magistrate's decision raised by both Tucker and Uhl and sustaining the magistrate's decision in its entirety. On May 9, 2023, Tucker filed a timely notice of appeal from the trial court's decision. Over the next few months, briefs from both parties were filed, and oral argument was held before this court. Tucker's appeal now properly before this court for decision, Tucker has raised one assignment of error for review.

**Tucker's Appeal and Single Assignment of Error**

{¶ 13} THE TRIAL COURT ERRED IN SUSTAINING THE DENIAL OF A CIVIL SEXUALLY ORIENTED OFFENSE PROTECTION ORDER.

{¶ 14} Tucker argues the trial court erred by denying the petition for a civil sexually oriented offense protection order in this case. We disagree.

{¶ 15} R.C. 2903.214 governs both civil stalking and sexually oriented offense protection orders. *R.R. v. J.H.*, 8th Dist. Cuyahoga No. 109465, 2021-Ohio-706, ¶ 16. As noted above, Tucker filed the petition for a civil sexual oriented offense protection order against Uhl in accordance with R.C. 2903.214(C)(1). "R.C. 2903.214(C)(1) provides for the issuance of a protection order to protect those individuals who demonstrate that another has committed a sexually oriented offense against their person." *Weismuller v. Polston*, 12th Dist. Brown No. CA2011-06-014, 2012-Ohio-1476, ¶ 17. Specifically, R.C. 2903.214(C)(1) allows a petitioner to request the issuance of a civil sexual oriented offense protection order in circumstances where the respondent, who is 18 years of age or older, can be shown to have "committed a sexually oriented offense against the person to be protected by the protection order * * *." R.C. 2950.01(A)(1) defines the term "sexually oriented offense" to include the offense of sexual imposition in violation of R.C. 2907.06(A)(1). Pursuant to that statute, no person shall have "sexual contact" with another, not the spouse of the offender, when "[t]he offender knows that the sexual contact is

offensive to the other person," or is "reckless in that regard."

{¶ 16} "[A] preponderance of the evidence standard applies to the issuance of a sexually oriented offense protection order." *Weismuller* at ¶ 18. Thus, "[i]n order to be granted a civil sexually oriented offense protection order, petitioner must show, by a preponderance of the evidence, that the respondent committed a sexually oriented offense." *Spahr v. Martin*, 5th Dist. Licking No. 18-CA-42, 2019-Ohio-962, ¶ 17. "'Preponderance of the evidence' means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *Mather v. Hilfinger*, 12th Dist. Warren CA2020-12-083, 2021-Ohio-2812, ¶ 16, quoting *Eckstein v. Colian*, 7th Dist. Columbiana No. 11 CO 22, 2012-Ohio-4038, ¶ 14. Therefore, "[w]hen assessing whether a protection order should have been issued, the reviewing court must determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief." *Weismuller*, 2012-Ohio-1476 at ¶ 19, citing *Olenik v. Huff*, 5th Dist. Ashland No. 02-COA-058, 2003-Ohio-4621, ¶ 16-18. "Accordingly, a manifest weight of the evidence standard is applied." *Id.*; *Rehfus v. Smith*, 7th Dist. Carroll No. 14 CA 897, 2015-Ohio-2145, ¶ 21.

{¶ 17} Tucker argues the trial court erred by denying a protection order in this case upon finding the issuance of such an order was not necessary. To support this claim, Tucker argues that neither the language found in R.C. 2903.214(C)(1), nor the case law discussing civil sexually oriented offense protection orders, require the petitioner to show a need for the issuance of such an order before the order can be granted. We agree that neither the express language found in R.C. 2903.214(C)(1), nor the applicable case law discussing civil sexually oriented offense protection orders, sets forth that *specific* requirement by using that *exact* term. We disagree, however, with Tucker's underlying assertion. That being, Tucker's argument that the petitioner's showing, by a preponderance

of the evidence, that the respondent had committed a sexual oriented offense against the petitioner is sufficient, standing alone, to warrant the trial court issuing a protection order.

{¶ 18} A civil sexually oriented offense protection order is a special statutory remedy that is designed to prevent future harm to the petitioner before it occurs. The same is true for a civil stalking protection order. *See Bey v. Rasawehr*, 161 Ohio St.3d 79, 2020-Ohio-3301, ¶ 16 (noting that a civil stalking protection order is a "special statutory remedy that is designed to prevent violence"). The goal for both types of protection order is to allow the police and the courts to act before the petitioner can be harmed by the respondent, rather than to punish the respondent for prior bad acts. That is to say, the issuance of a protection order is an expeditious remedy that is "in addition to, and not in lieu of, any other available civil or criminal remedies." R.C. 2903.214(G)(1). This is why courts are only authorized to issue protection orders that include terms "designed to ensure the safety and protection of the person to be protected by the protection order * * *." R.C. 2903.214(E)(1). These terms may include, but are not limited to, "a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member." *Id.*

{¶ 19} In this case, however, there was nothing in the record to indicate Uhl posed any threat to Tucker. This holds true for both present, imminent threats, as well as any potential future threats. This is because, as the record indicates, Uhl has been fired from his position as a part-time yoga instructor at the Miami University campus fitness center and no longer works on the Miami University campus. There is also nothing in the record that indicates Tucker, who was a senior at Miami University prior to this case being initiated, is still a student at Miami University who is living in or around the Oxford, Butler County, Ohio area. This is in addition to the fact that, as noted above, outside of their brief period of social media messaging, Tucker and Uhl did not know each other and had never seen or

encountered each other before their meeting on Grindr. The record indicates that this includes Tucker and Uhl never meeting or interacting with each other while on the Miami University campus.

{¶ 20} Tucker testified that an order of protection should be granted in this case because, "I don't feel that I should fear for my safety being on my school campus or being at work, and I don't feel that I should have to avoid certain places on campus that I pay to go to school for." We agree that Tucker should not have to be fearful or avoid certain places while at school or at work. Tucker, however, has failed to provide any explanation for how or why Uhl's mere presence would elicit such a reaction. The legislature clearly did not intend for courts to infringe upon an individual's rights and freedom of movement without some justifiable reason for doing so. This is why, rather than the word "shall," R.C. 2903.214(E)(1)(a) instead uses the word "may" when discussing whether a protection order should be issued to the petitioner. The General Assembly's use of the word "may" means the trial court's granting of a protection order is discretionary, not automatic. To the extent Tucker claims otherwise, Tucker's argument lacks merit and the trial court's decision denying Tucker a civil sexually oriented offense protection order was not an abuse of discretion.

{¶ 21} In *R.R. v. J.H.*, the Eighth District Court of Appeals determined that a trial court properly issued a civil sexually oriented offense protection order where the petitioner, R.R., presented sufficient evidence to establish, by a preponderance of the evidence, that the respondent, J.H., committed a sexually oriented offense against her. The Eighth District did not stop there, however. The Eighth District also determined that issuing such an order to R.R. was "warranted" under the facts of that case. *Id.*, 2021-Ohio-706 at ¶ 26. Specifically, the Eighth District determined that:

The evidence presented by R.R. at the hearing was sufficient to

establish by a preponderance of the evidence that J.H. committed a sexually oriented offense against her, *and that a civil protection order was warranted*.

(Emphasis added.) *Id.*

{¶ 22} Those facts included, but were not limited to, evidence that R.R. had been attacked, raped, and beaten by her former boyfriend, J.H., while R.R. was at J.H.'s apartment, for which R.R. "sought treatment because she decided she was finally done with J.H.'s abuse." *Id.* When used as a verb, the word "warranted" means "to justify" or "to serve as or give adequate ground or reason for." *Black's Law Dictionary*, 760 (2d Pocket Ed.2001); and *Merriam-Webster Dictionary Online*, https://www.merriam-webster.com/dictionary/warranted (last accessed October 4, 2023). Therefore, as noted by the Eighth District in *R.R. v. J.H.*, the question is not simply whether the petitioner can demonstrate that the respondent committed a sexually oriented offense. We agree with the Eighth District's reasoning and analysis in *R.R. v. J.H.*

{¶ 23} In reaching this decision, we note that such analysis is also consistent with the Ohio Rules of Superintendence, Form 10.3-F, promulgated by the Ohio Supreme Court for courts, like the trial court in this case, to use when issuing civil protection orders under R.C. 2903.214(C)(1). This includes a box for the trial court to check upon issuing a civil sexually oriented offense protection order that such an order of protection is "necessary" to protect the petitioner from sexually oriented offenses committed by the respondent. Specifically, as Form 10.3-F expressly provides:

> ☐ The Court finds by a preponderance of the evidence that 1) Petitioner or Petitioner's family or household members have been a victim of a sexually oriented offense as defined in R.C. 2950.01, committed by Respondent; and 2) the following orders are equitable, fair, and necessary to protect the persons named in this Order from sexually oriented offenses.

Therefore, just as the trial court found, the necessity of a protection order must be shown before an order of protection may be issued to the petitioner. This holds true for both civil

stalking protection orders and civil sexually oriented offense protection orders. Again, to the extent Tucker claims otherwise, Tucker's argument lacks merit and, as previously mentioned, the trial court's decision denying Tucker a civil sexually oriented offense protection order was not an abuse of discretion.

{¶ 24} In so holding, we note that as part of this appeal, Uhl challenges the trial court's decision finding, by a preponderance of the evidence, that a sexually oriented offense was committed against Tucker, thereby warranting the issuance of a civil sexually oriented offense civil protection order to Tucker.[4] Uhl's argument, however, completely ignores Tucker's testimony about what was alleged to have happened during their sexual encounter. Uhl's argument also overlooks the trial court's credibility determination made in this case. That is, the trial court's finding Tucker's testimony more credible and consistent than the testimony offered by Uhl. The trial court based this credibility determination on, among other things, the trial court's own observations of both parties during the full hearing held on Tucker's petition on February 10, 2023.

{¶ 25} "Evaluating evidence and assessing its credibility are the primary functions of the trier of fact, not the appellate court." *Lay v. Chamberlain*, 12th Dist. Madison No. CA99-11-030, 2000 Ohio App. LEXIS 5783, *5 (Dec. 11, 2000). We must therefore defer to the trial court's credibility determination in this case. That is to say, we must defer to the trial court's determination finding Tucker's testimony more credible than that of Uhl's. *See, e.g., L.L.L. v. Junies*, 2d Dist. Greene No. 2013 CA 31, 2014-Ohio-141, ¶ 15 ("[t]he trial court credited L.'s testimony over that of Junies, and we must defer to the credibility determination

---

4. We note that Uhl did not file a notice of cross-appeal in this case. Uhl, however, was not required to do so in order to raise this argument. This is because, in accordance with App.R. 3(C)(2), "[a] person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the order is not required to file a notice of cross-appeal or to raise a cross-assignment of error." That is what Uhl intends to do here, thus alleviating the need for Uhl to file a notice of cross-appeal in this case.

made by the magistrate and adopted by the trial court"). "The trial court's findings are given deference because 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Weismuller*, 2012-Ohio-1476 at ¶ 19, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, Uhl's challenge to the trial court's decision finding, by a preponderance of the evidence, that a sexually oriented offense was committed against Tucker, thereby warranting the issuance of a civil sexually oriented offense civil protection order to Tucker, is meritless.[5]

## Conclusion

{¶ 26} For the reasons outlined above, Tucker's appeal from the trial court's decision denying the petition for a civil sexually oriented offense protection order against Uhl is denied.

{¶ 27} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.

---

5. We note that the trial court's finding Uhl had committed a sexual oriented offense against Tucker was by a preponderance of the evidence and not the beyond a reasonable doubt standard applied to criminal prosecutions. Whether Uhl could be found guilty of a sexually oriented offense against Tucker beyond a reasonable doubt is not at issue in this appeal, and was never an issue for the trial court to decide in this case.