[Cite as *T.O. v. T.G.*, 2024-Ohio-4510.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| T.O. | : | |
| | : | |
| Appellant | : | C.A. No. 30058 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 03283 |
| | : | |
| T.G. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 13, 2024

. . . . . . . . . .

CATHERINE A. DEMPSEY, Attorney for Appellant

JOSHUA ADAM ENGEL, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Petitioner-Appellant T.O. appeals from an order of the Montgomery County Court of Common Pleas, which dissolved a sexually oriented offense civil protection order

after sustaining the objections of Respondent-Appellee T.G.[1]  For the reasons explained below, we conclude that the trial court incorrectly added an "immediate and present danger" requirement when ruling on Respondent's objections.  Therefore, we will reverse the judgment of the trial court and remand the cause for the trial court to apply the correct legal standard in ruling on Respondent's objections.

## I.  Facts and Course of Proceedings

{¶ 2} On June 23, 2023, T.O. filed a petition for a sexually oriented offense civil protection order pursuant to R.C. 2903.214.   As part of her petition, T.O. requested an "ex parte (emergency) protection order."   She further requested that a full hearing trial be scheduled, regardless of whether the ex parte protection order was granted or denied.  At the conclusion of the ex parte hearing, the magistrate overruled the request for an ex parte civil protection order due to a lack of evidence showing a risk of imminent physical harm.   A full hearing on the petition for a protection order was then scheduled.

### A.  The Testimony at the Full Hearing

{¶ 3} On August 11, 2023, the full hearing on the request for a protection order was held before the same magistrate who denied the ex parte request.   Petitioner testified first at the hearing and provided the following testimony.   August 11, 2023 Tr. 4-78.   Petitioner is from Canada and began attending classes at the University of Dayton Law School in May 2022.  She was expected to graduate in May 2024 as part of an

---

[1] We will refer to the parties throughout this opinion by either their initials or their status as Petitioner or Respondent.

accelerated two-year program. Petitioner was in a small class cohort with Respondent and about 13 other students.

{¶ 4} On Friday, October 28, 2022, Petitioner planned to attend a Halloween party at Brixx Ice Company, a restaurant in Dayton. The outing at Brixx was sponsored by the law school's student bar association. Respondent offered to give Petitioner a ride to the party. He picked her up from her apartment and then they picked up another member of their class cohort. All three of them went to the apartment of another member of their class cohort. Petitioner did not eat anything before going to Brixx but did have one shot of alcohol and one or two seltzer drinks that contained alcohol. She and Respondent received rides with different people from their classmate's house to Brixx.

{¶ 5} As far as Petitioner could remember, she only had one drink at Brixx, a blue drink that Respondent bought for her. The next thing she vaguely remembered was being in pain and in her apartment. When asked about what she recalled about that time, she testified as follows:

> So I have a number of memories that I don't know chronologically what one that I think occurred in, but I was jolted into having the memory by sensations of pain. So in a various order, I remember being hit in the face at least twice. I remember being choked and not being able to breathe while I was on my back. I remember [Respondent] penetrating my vagina and my anus with both his fingers and his penis. And I remember him holding my head down and forcing me to give him oral. And I was choking. I couldn't breathe.

August 11, 2023 Tr. 12. Petitioner also remembered falling off her bed but did not remember getting off the floor. She believed she woke up about 9:30 or 10:00 the next morning, and her brain felt "foggy" at that time. Petitioner described the feeling as different from a hangover. She went into her bathroom and took a Tylenol.

{¶ 6} When Petitioner returned to her bed, Respondent forced her to have vaginal and oral sex. Petitioner testified that she recalled saying no to him at least three times that morning while he was forcing her to have sex. She tried to resist but was unable to physically prevent Respondent from raping her.

{¶ 7} After Respondent left her apartment, Petitioner struggled to figure out what had happened. She took a shower, was in a lot of pain, and noticed bruises on her body. She sent a couple of text messages to Respondent about whether he had been tested for sexually transmitted diseases and whether he knew where her missing earring was.

{¶ 8} During that day, Petitioner called her sister, her boyfriend, and her mother. Petitioner explained to her boyfriend that she woke up in the bed of her apartment next to Respondent and did not remember how he had gotten there. She and her boyfriend researched how to report the sexual violence that had occurred. Ultimately, she submitted an online report through a University of Dayton website.

{¶ 9} Petitioner went to Miami Valley Hospital the next day (Sunday) and underwent a sexual assault exam, which included a rape kit. She spoke with a police detective that day and the following Tuesday. Petitioner submitted pictures at the full hearing that she had taken of herself on Sunday night after she returned home from the hospital. The pictures showed a number of bruises on her body.

**{¶ 10}** T.O. filed her petition for a civil protection order on June 23, 2023. She explained that she was unaware of the civil protection order option until speaking with a prosecutor during a federal court externship. She filed the petition shortly after discovering she could do so. T.O. decided to file her petition because Respondent had violated the University of Dayton's no contact order a number of times. Further, she testified as follows regarding her purpose for seeking a protection order:

> I want to feel safe. [Respondent] knows where I live. We go to the same school. I don't feel safe on campus. I have panic attacks every time I go on campus. I don't feel safe going out at any point. I know he owns firearms. I know that he could find me at any point, and I'm concerned that he could do this to me again. He's shown no remorse or concern. He's -- I mean, he has threatened me to the investigators and the school investigation that make me concerned that he's going to follow me in my career and ruin my chance for employment. And he has said to them that he was going to ruin my life. And I'm concerned that he is going to hurt me and make my life more of a hell.

August 11, 2023 Tr. 35-36.

**{¶ 11}** Petitioner conceded on cross-examination that she did not have many vivid memories of what had happened after she consumed the blue drink at Brixx. However, she recalled "snippets" or flashes. She did not recall getting a ride from Brixx or to her house or getting her keys out to enter her apartment. But she did have flashes of memory from the pain caused by Respondent and the two times she recalled him forcing

her to have sex.

**{¶ 12}** G.W. testified next at the hearing and provided the following testimony. *Id.* at 79-90. She met Respondent through a friend who is a member of Petitioner and Respondent's small class cohort. On the evening of October 28, 2022, G.W.'s group of friends met the law school group of friends at Flanagan's. G.W. testified that Petitioner seemed "indisposed because of the alcohol content." *Id.* at 84-85. G.W. stated that Respondent looked uncomfortable when Petitioner was dancing near him. But she later noticed that Respondent and Petitioner were kissing and touching each other near the time everyone was getting ready to leave Flanagan's. G.W. did not have any concerns about consent when she saw them kissing. She also noticed that Petitioner had at least one mixed drink while at Flanagan's.

**{¶ 13}** Respondent was the last witness to testify and provided the following testimony. *Id.* at 91-122. He started law school in May 2022 under an accelerated two-year program. He met Petitioner through law school classes. He first talked to her in class and then began texting her in June 2022. Although he had never gone out with her individually, he had accompanied her and a group of law school friends to a baseball game and a few bars afterward. Petitioner had asked him to join her and a group of friends on another night, but he declined.

**{¶ 14}** Originally, Respondent had not planned to go to the Halloween party at Brixx. Rather, his plan was to go home to New York to visit family. He later decided to go to the party and stay in Dayton to prepare for a class he had on Monday. He offered a ride to Petitioner and another member of their class cohort. Respondent drove a four-

door Tacoma truck. There was a suitcase and backpack in the backseat that he had packed for his New York trip. Respondent picked up Petitioner, their classmate, and some pizza and drove them to an apartment where another one of their law school classmates was hosting a gathering before the event at Brixx. Everyone drank some alcohol at that apartment.

{¶ 15} Respondent recalled being at Brixx at 8:30 p.m., heading to Ned Pepper's at 10:45 p.m., and going to Flanagan's at 11:45 p.m. He bought Petitioner a blue drink while they were at Brixx. According to Respondent, it was not a strong alcoholic drink. While at Ned Pepper's, Petitioner bit his ear and whispered to him that they should leave together. They kissed when they believed they were out of sight of their classmates. They took an Uber or Lyft to Flanagan's, where they remained until 2:30 a.m.

{¶ 16} After they left Flanagan's, Respondent and Petitioner took a Lyft to where Respondent's truck was parked. Petitioner suggested that they get into the back of his truck and have sex. They had vaginal and oral sex in the back of the truck next to Respondent's suitcase and backpack. Respondent recalled that they were in the back of the truck for between 30 and 45 minutes. He then drove them to Petitioner's apartment.

{¶ 17} Once inside the apartment, they immediately began kissing and went to the bedroom. They again had vaginal and oral sex. Respondent testified that Petitioner never told him no, he never choked or hit her, and she did not fall off the bed. They fell asleep after having sex inside the apartment. When they woke up later that morning, they had a friendly conversation while lying in bed. Then they had oral and vaginal sex

for a third time.   Petitioner asked Respondent if he thought anyone knew they were going to have sex.   She also stated that she did not know how she was going to tell her boyfriend about this.

{¶ 18} Respondent got dressed and left the apartment to head home.   Petitioner sent him a couple of text messages asking him whether he had found one of her earrings and whether he had been tested for sexually transmitted diseases.   Respondent considered the latter message a pretty standard question for what he believed was a "one-night stand."   He had not spoken to Petitioner since he responded to those text messages.

{¶ 19} On November 7, 2022, Respondent was contacted by a police detective relating to the night of October 28, 2022.   He met with the police detective and also provided information to the University of Dayton, which was investigating the incident. Respondent learned in June 2023 that neither the university nor the police department planned to pursue the matter any further.   He described the emotional and financial toll he had experienced since the night of October 28, 2022.   He stated that "it's not something I would like to ever do again."

### B.  The Decisions of the Magistrate, the Trial Court, and the Visiting Judge

{¶ 20} After the hearing, the magistrate issued an undated written denial of T.O.'s petition for a civil protection order.   The magistrate found that Petitioner had failed to demonstrate by a preponderance of the evidence that a sexually oriented offense occurred.   Magistrate's Decision, p. 7.   According to the magistrate, Petitioner was not

credible, the majority of her testimony was unbelievable, and the evidence failed to support her version of the events. *Id.* at 7-8. The magistrate found that "[e]ven if Petitioner is to be believed, Ohio case law doesn't support a finding that a sexual offense occurred between Petitioner and Respondent."[2] *Id.* at 9.

{¶ 21} In making her credibility determination, the magistrate relied on the following reasoning: (1) it was unreasonable for the Petitioner to wait 26 hours to report the alleged rape solely because she was from Canada and unsure how to report a sexual assault; (2) Petitioner is from Alberta, Canada, which is "an overall similar society to Dayton, Ohio"; (3) the magistrate was "unaware of any first-world, modern country that does not have police investigate crimes"; (4) "using common sense and reasoning, [Petitioner] could have asked an American friend, googled the inquiry, or called the police in hopes that they were the correct agency to report a crime"; (5) the Petitioner's research into how to report the crime took "at least half a day"; (6) Petitioner's high grade-point average at law school meant that rather than not knowing how to report the alleged rape, Petitioner must have made the story up "after trying to reconcile her consensual actions and her beliefs"; (7) it was "curious" that Petitioner would think Respondent may have been in possession of her missing earring if she did not have any recollection of having sex with him in the back seat of his truck; (8) Petitioner's confusion over what the word "admitted" meant in relation to her time at the hospital was unreasonable despite the significant difference between the healthcare systems in the United States and Canada; (9) the pictures of

---

[2] This finding was particularly curious given the fact that Petitioner testified she told Respondent "no" at least three times while he was forcing her to have sex, which generally would constitute the offense of rape, R.C. 2907.02(A)(2). August 11, 2023 Tr. 15.

bruises on Petitioner's body did not demonstrate a violent sexual assault because they were blurry and "zoomed in," the bruises on Petitioner's breasts seemed consistent with receiving a "hickey," and the other bruises looked as though Petitioner "was pinched repeatedly in the thighs and arm"; and (10) Petitioner did not provide the magistrate with any record of medical treatment to corroborate her version of events.

{¶ 22} On October 24, 2023, the trial court rejected the magistrate's decision "in its entirety." The trial court granted the civil protection order and attached "Additional Findings of Fact" to the protection order, finding that Petitioner had been more credible than Respondent. In particular, the trial court explained, in part:

> Upon review of the testimony and the evidence, the Court finds that Petitioner's testimony is consistent, credible, and supported by the physical evidence. While Petitioner's memory of the events is sparse, she is consistent in what she does not remember. Her testimony is consistent with the experience of someone who has become inebriated to the point of being incapable of consent. From her testimony, it does not appear that she was capable of forming memories after drinking the blue drink at Brixx, which would be consistent with an alcohol-induced blackout. Further, Petitioner testified that she experienced flashes of pain as she was hit in the face. She has bruising to her nose and cheekbone. She testified that she remembered not being able to breathe while on her back. She has bruises to her neck and chest. The Court finds that the significant bruising to Petitioner's body is inconsistent with a consensual sexual experience with

someone in control of their body.

> On the other hand, the Court finds the Respondent's testimony is inconsistent, unsupported by the evidence, and belied by his own witness. While claiming that he was too drunk to remember going into Petitioner's apartment, he remembers other statements and events with exacting detail.

October 24, 2023 Additional Findings of Fact, p. 9.   The trial court noted that G.W. had testified that she had seen Respondent intoxicated before and that he did not appear too intoxicated that evening.   At the same time, G.W. testified that it seemed like Petitioner was indisposed because of alcohol content.   The court continued, "most significantly, Respondent's testimony provides no explanation or accounting for the significant bruising on Petitioner's body."   *Id.* at 10.

**{¶ 23}** The trial court concluded that:

> [A] preponderance of the credible evidence presented in this case establishes that Respondent has committed a sexually oriented offense against Petitioner.   Specifically, the evidence demonstrates that Respondent engaged in sexual conduct with the Petitioner when her ability to resist or consent was substantially impaired because of a mental or physical condition and that Respondent knew or had reason to believe that Petitioner's ability to resist or consent is substantially impaired because of her mental or physical condition.

*Id.* at 10-11.

**{¶ 24}** The civil protection order was made effective until June 23, 2026.   As part

of the civil protection order, the trial court marked the box that stated, "The Court finds by a preponderance of the evidence that 1) Petitioner . . . [has] been a victim of a sexually oriented offense as defined in R.C. 2950.01, committed by Respondent; and 2) the following orders are equitable, fair, and necessary to protect the persons named in this Order from sexually oriented offenses."

{¶ 25} On November 7, 2023, Respondent filed a notice of appeal from the trial court's order and filed objections to the order.[3]   Respondent contended in his objections that (1) the trial court improperly drew conclusions about Petitioner's testimony based on expert evidence not in the record; (2) there was not sufficient credible evidence to support the issuance of a protection order; (3) the court improperly rejected the credibility determinations made by the magistrate judge; (4) sufficient evidence existed to support the magistrate's denial of the petition; and (5) the court's restriction on firearm possessions unduly burdened Respondent's Second Amendment rights and lacked sufficient nexus to the facts in the record.   Respondent also filed a copy of the transcripts from both the ex parte and the full hearings before the magistrate and a motion to supplement the record with a copy of the magistrate's decision denying the petition for a protection order.   It does not appear that the trial court ever issued a ruling on this particular motion to supplement.

{¶ 26} Petitioner filed a memorandum in opposition to Respondent's objections. The trial court judge recused herself while the objections were pending "in an abundance of caution in deference to the rights of the Defendant after rejecting the Magistrate's

---

[3] Respondent subsequently voluntarily dismissed his appeal from the October 24, 2023 decision.

Decision and issuing a substantive opinion in this case." Therefore, a visiting judge was assigned to the case.

{¶ 27} On January 25, 2024, the visiting judge issued an order that dissolved the civil protection order. At the beginning of his decision, the visiting judge explained that he was not reconsidering the findings of fact made by the trial court in its October 24, 2023 decision. He stated:

> As an initial matter, the Court accepts the findings of the trial court as filed October 24, 2023 with regard to weighing of credibility of the witnesses, including the conclusion that "Respondent's testimony is inconsistent, unsupported by the evidence, and belied by his own witness." In short, in the current analysis, there is no dispute that sexual conduct occurred between the parties, that the conduct was not consensual and that Petitioner was physically injured. These findings are not re-considered.

Decision (Jan. 25, 2024), p. 3-4.

{¶ 28} However, according to the visiting judge, the necessary elements for a civil protection order include "proof of conduct which demonstrates an 'immediate and present' danger that Respondent will cause physical harm or mental anguish," and Petitioner failed to present such evidence. *Id.* at 7. Therefore, the visiting judge found Respondent's second and fourth objections dispositive and dissolved the civil protection order. He did not rule on the other objections. Petitioner filed a timely notice of appeal from the January 25, 2024 decision.

## II.    The Magistrate's Decision and the Standard of Review

{¶ 29} Before we resolve the assignments of error before us, we believe it is necessary to address the fact that the magistrate's decision was not filed and served on the parties until we ordered it be done on appeal.   While this fact ultimately will not affect our resolution of the assignments of error in this particular appeal, we believe it is important to provide some guidance as to what should be done with a magistrate's decision in a civil protection order case.

{¶ 30} On November 7, 2023, Respondent filed a motion in the trial court to supplement the record with a copy of the magistrate's decision.   The trial court did not rule on this particular motion, most likely because it coincided with the filing of an appeal that ultimately was voluntarily dismissed.   While the current appeal was pending, however, Respondent filed a second motion to supplement the record in the trial court pursuant to App.R. 9(E).   Petitioner opposed the motion.   On June 3, 2024, the trial court[4] issued an entry denying Respondent's motion to supplement the record because the magistrate's decision was not "relevant on appeal because it was rejected by the trial court in its entirety, and was never made a part of the Court's record."   The trial court noted that the magistrate's decision was rejected because "there was an error of law or other defect evident on the face of the order."   *Id.* at 1-2.

{¶ 31} On June 14, 2024, we ordered the clerk of courts to supplement the record with the magistrate's decision.   On July 11, 2024, the trial court issued an entry filing the

---

[4] On May 3, 2024, the Ohio Supreme Court issued an "Entry of Rescission Certificate of Assignment," which withdrew the visiting judge's assignment to this case.   Since that date, the original judge assigned to the case has presided over the case despite previously recusing herself from ruling on the objections to her October 24, 2023 decision.

magistrate's decision under seal. The entry stated, in pertinent part: "It is unclear to this Court if the Court of Appeals is aware of this Court's Decision filed herein on June 3, 2024, holding that the Magistrate's Decision is not properly part of the record on appeal because it was never adopted by this Court." The trial court ordered the magistrate's decision to be sealed "and opened only by a Court of appropriate authority." The clerk of courts then filed the magistrate's decision under seal.

{¶ 32} On July 23, 2024, this Court issued an order to allow the parties to this appeal access to the magistrate's decision. We also allowed the parties until August 14, 2024, to file supplemental briefing addressing what impact, if any, the magistrate's decision should have on the issues raised in the current appeal. The parties have filed their respective supplemental briefs.

### A. What Happens to the Magistrate's Decision After It Is Issued

{¶ 33} Civ.R. 53 is the primary mechanism for referring cases to magistrates. On June 1, 2012, Civ.R. 65.1 became effective. Civ.R. 65.1 was adopted "to provide a set of provisions uniquely applicable to [special statutory proceedings established by R.C. 3113.31, R.C. 2151.34 and R.C. 2903.214] because application of the existing rules, particularly with respect to service, discovery, and reference to magistrates, interferes with the statutory process and is inconsistent with its purpose." *M.D. v. M.D.*, 2018-Ohio-4218, ¶ 47 (8th Dist.), quoting 2012 Staff Note, Civ.R. 65.1.

{¶ 34} Protection orders are now governed by Civ.R. 65.1, including domestic violence civil protection orders, civil stalking protection orders, and sexually oriented

offense civil protection orders. Civ.R. 65.1(A). Importantly, Civ.R. 65.1 states that certain parts of the civil protection order process are not subject to the requirements of Civ.R. 53, which governs proceedings in matters referred to magistrates. Technically, the written decision issued by a magistrate in a proceeding covered by Civ.R. 65.1 is not considered a "magistrate's decision" in the same sense as a decision issued by a magistrate in a proceeding covered by Civ.R. 53.

{¶ 35} A magistrate's decision to grant a protection order after a full hearing is not effective unless adopted by the court. Civ.R. 65.1(F)(3)(c)(i). *See also* Civ.R. 65.1(F)(3)(c)(v) (court's adoption is effective when signed by the court and filed with the clerk). The court may adopt the magistrate's decision granting or denying the full-hearing protection order "upon review of the order and a determination that there is no error or law or other defect evident on the face of the order." Civ.R. 65.1(F)(3)(c)(ii). This review necessarily involves a review of the decision issued by the magistrate after the full hearing.

{¶ 36} In *Insa v. Insa*, 2016-Ohio-7425, ¶ 27 (2d Dist.), we pointed out further differences between Civ.R. 53 and Civ.R. 65.1:

> Civ.R. 65.1, unlike Civ.R. 53, does not provide for a request for findings of fact and conclusions of law (*see* Civ.R. 53(D)(3)(a)(ii)), suggesting a more streamlined proceeding for protection orders. Under Civ.R. 65.1 the trial court may adopt the magistrate's denial or grant of a protection order "upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." Civ.R. 53

allows the court to "hear a previously-referred matter, take additional evidence, or return a matter to a magistrate," Civ.R. 53(D)(4)(b), and it requires the trial court to undertake "an independent review as to the objected matters." Civ.R. 53(D)(4)(d). Each of those options is absent from Civ.R. 65.1, which indicates that court action includes only "adoption, modification, or rejection," of a magistrate's decision, Civ.R. 65.1(F)(3)(c)(iv), and no standard of review is designated.[5]

{¶ 37} No provision of Civ.R. 65.1 precludes a magistrate's decision from being filed or served on the parties. The plain language of Civ.R. 65.1 only requires the trial court's adoption, modification, or rejection of the magistrate's decision to be filed with the clerk. Civ.R. 65.1(F)(3)(c)(v). But the plain language of Civ.R. 65.1 also requires the trial court to review a magistrate's decision prior to adopting, modifying, or rejecting the decision. Civ.R. 65.1(F)(3)(c)(ii) and (iii). We believe it is axiomatic that any documents the trial court reviews as part of its duty under Civ.R. 65.1 to adopt, modify, or reject the magistrate's decision, including the decision itself, should be made a part of the record. We acknowledge that a magistrate's decision does not carry any legal effect once a trial court rejects it pursuant to Civ.R. 65.1. We are troubled, however, by the idea that a magistrate's decision should be made a part of the record and served on the parties when it is adopted by the trial court but should neither be made a part of the record nor served on the parties when it is rejected by the trial court. In both situations, the trial court had

---

[5] In *Insa*, we were careful to point out that we were simply stating what the rules contained and were not determining "whether or not a court may have inherent authority to take additional evidence or return a matter to a magistrate upon objection under Civ.R. 65.1." *Id.* at ¶ 27, fn. 3.

a duty to review the magistrate's decision, and the record should include the document the trial court reviewed when fulfilling its duties under Civ.R. 65.1.

{¶ 38} We conclude that a magistrate's decision should be made a part of the record regardless of whether the trial court ultimately adopts, modifies, or rejects it. Such a practice ensures that the parties to a proceeding and a reviewing court have access to all the information the trial court considered when making the crucial decision whether to adopt, modify, or reject a magistrate's decision.

## B. The Standard of Review in the Present Appeal

{¶ 39} This appeal involves a unique procedural history that involves several standards of review. The magistrate began the process by determining whether the Petitioner had proven by a preponderance of the evidence that she was a victim of a sexually oriented offense. The trial court was then tasked with the duty of reviewing the magistrate's decision. The trial court was permitted to adopt the magistrate's decision "upon review of the order and a determination that there [was] no error of law or other defect evident on the face of the order." Civ.R. 65.1(F)(3)(c)(ii). Or the trial court could have modified or rejected the magistrate's decision. Civ.R. 65.1(F)(3)(c)(iii). In this case, when the trial court issued its decision rejecting the magistrate's decision, the parties had an opportunity to file objections to the trial court's decision. After Respondent filed objections to the October 24, 2023 order rejecting the magistrate's denial of the civil protection order, the trial court then had the duty to determine whether Respondent had met his "burden of showing that an error of law or other defect [was] evident on the face

of the order, or that the credible evidence of record [was] insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order." Civ.R. 65.1(F)(3)(d)(iii). In both this final review by the trial court under Civ.R. 65.1(F)(3)(d)(iii) and in our review on appeal, it must be determined whether a protection order should have been granted and, thus, whether the necessary elements were established by a preponderance of the evidence. That review entails a manifest weight of the evidence review. *Caban v. Ransome*, 2009-Ohio-1034, ¶ 7 (7th Dist.).

**{¶ 40}** The Ohio Supreme Court has explained that the manifest weight of the evidence standard set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), a criminal case, also applies in civil cases. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17-23. As explained in *Thompkins*, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). However, in weighing the evidence, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

**{¶ 41}** In their supplemental briefing, the parties disagreed whether the magistrate's credibility determinations had to be accepted by the trial court when making the manifest weight determination required by Civ.R. 65.1. Petitioner contends that the magistrate's decision was a nullity once the trial court rejected it in its entirety.

Petitioner's Supplemental Brief, p. 3. According to Petitioner, a magistrate's decision rejected under Civ.R. 65.1(F)(3)(c)(iii) should not be given any weight or consideration and has no authority.

{¶ 42} Respondent contends that the trial court failed to comply with Civ.R. 65.1 by (1) issuing its decision rejecting the magistrate's decision prior to the filing of any objections and (2) applying the incorrect standard. According to Respondent, the trial court should not have rejected the magistrate's decision because it did not contain an error of law or a facial defect. Respondent argues that the trial court's rejection of the magistrate's decision on credibility grounds was improper, because the trial court is not permitted to conduct an independent review of the record when first reviewing the magistrate's decision under Civ.R. 65.1. Further, Respondent believes that once he had filed objections to the trial court's rejection of the magistrate's decision, the trial court was tasked with determining whether insufficient evidence existed to support the magistrate's decision. Respondent's Supplemental Brief, p. 6, citing *Durastanti v. Durastanti*, 2020-Ohio-4687, ¶ 16 (1st Dist.). We do not agree.

{¶ 43} Civ.R. 65.1(F)(3)(c)(ii) and (iii) address the trial court's duty when it receives a magistrate's decision. The trial court may adopt the magistrate's decision "upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." Civ.R. 65.1(F)(3)(c)(ii). This language makes it clear that a trial court "may" adopt the magistrate's decision after conducting only a review for an "error of law or other defect evident on the face of the order." *Id.* Or the trial court may modify or reject the magistrate's decision. Civ.R. 65.1(F)(3)(c)(iii). Notably, there is no similar

language in Civ.R. 65.1(F)(3)(c)(iii) that implies that the trial court's modification or rejection comes after conducting only a review for an error of law or other defect evident on the face of the order.

{¶ 44} We acknowledge that there is an argument to be made that a full, independent review of magistrate's decisions prior to the filing of objections, including any credibility findings contained therein, is inconsistent with the expedited nature of civil protection order proceedings contemplated by Civ.R. 65.1.  Indeed, the 2012 Staff Note to Civ.R. 65.1 states that

> The statutes provide expedited processes for obtaining an ex parte
> protection order and for obtaining a protection order after a full hearing.
> When the proceedings are referred to a magistrate, several of the provisions
> of Civ.R. 53 are incompatible with those processes, particularly with respect
> to temporary magistrate "orders" to regulate the proceedings, independent
> review by the court of magistrate "decisions" rendered after hearing, and
> the filing and consideration of objections to those magistrate "decisions."

{¶ 45} Due to the expedited processes in place for obtaining a protection order after a full hearing and the reality that the transcript from the full hearing often will not be available at the time the trial court is determining whether to adopt, modify, or reject the magistrate's decision, it makes sense that a trial court initially may limit its review of a magistrate's decision to whether there is an "error of law or other defect evident on the face of the order."  Civ.R. 65.1(F)(3)(c)(ii).  In the present case, however, it is clear that the trial court had access to the transcript from the hearing when making its initial

determination to adopt, modify, or reject the magistrate's decision. And it is clear that the trial court did not agree with the magistrate's denial of the request for a civil protection order. The question becomes whether the trial court was permitted to reject the magistrate's credibility findings during its initial review of the magistrate's decision or whether it *had* to ignore what it believed to be blatantly incorrect credibility findings and adopt the magistrate's decision, even though it believed the magistrate's decision was clearly in error. We believe the former approach makes much more sense than the latter.

{¶ 46} The language in Civ.R. 65.1(F)(3)(c)(ii) is permissive: a trial court "may" adopt a magistrate's decision "upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." The permissive language implies that a trial court is not required to adopt a magistrate's decision just because no error of law or other defect is evident on the face of the order. Rather, the trial court has discretion to do so. Further, Civ.R. 65.1(F)(3)(c)(iii) contains permissive, unconditional language that a trial court "may" modify or reject a magistrate's decision. Once again, a trial court typically will not have the transcript before it until a party files objections to its initial decision adopting, modifying, or rejecting a magistrate's decision. Therefore, a trial court often will not be in a position to review the magistrate's credibility findings at this initial stage. But that does not mean a trial court must accept a magistrate's credibility determinations when a trial court is able to review the parties' testimony at this initial stage. It is important to remember that "[a] magistrate's power is specifically intended only 'to *assist* courts of record.' " (Emphasis in original.) *Dixon v. O'Brien*, 2011-Ohio-3399, ¶ 22 (7th Dist.), quoting Civ.R. 53(C)(1). "[Civ.R. 53] limits a magistrate's authority

because judicial power is vested in 'a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law.' " *Id.*, quoting Ohio Const., art. IV, § 1. " 'Magistrates are neither constitutional nor statutory courts. Magistrates and their powers are wholly creatures of rules of practice and procedure promulgated by the Supreme Court.' " *Yantek v. Coal Builders Ltd., Inc.*, 2007-Ohio-5126, ¶ 9 (1st Dist.), quoting *Quick v. Kwiatkowski*, 2001-Ohio-1498 (2d Dist.).

{¶ 47} Although Civ.R. 65.1 was adopted to help guide the courts and the parties through expedited civil protection order proceedings, we do not believe this rule was intended to strip the trial courts of their judicial power and transfer that power to magistrates. The Eleventh District has pointed out that "[w]hether the magistrate acted under Civ.R. 53, from which a magistrate derives his or her authority to act, or Civ.R. 65.1, which expedites the process for obtaining a civil protection order (and necessarily requires a referral by the trial court to a magistrate to conduct proceedings . . . under Civ.R. 53(C)(1)(d)); the magistrate's decisions and recommendations were all subject to the court's ultimate determination." *DeMarco v. Pace*, 2019-Ohio-3727, ¶ 60 (11th Dist.), citing *Dixon* at ¶ 22-23. Further, in *Bressler v. Nunemaker*, 2017-Ohio-5804 (5th Dist.), the Fifth District Court of Appeals concluded that "a trial court need not defer to the magistrate's determinations regarding witness credibility." *Id.* at ¶ 9, citing *In re A.M.*, 2010-Ohio-948, ¶ 13 (2d Dist.). The court noted, "[a]lthough the instant case proceeded under Civ. R. 65.1 rather than Civ. R. 53, nothing in Civ. R. 65.1 suggests that upon objections, the court is required to defer to the magistrate's determination of credibility.

Civ. R. 65.1(F)(3)(c)(iii) gives the court the authority to modify or reject the magistrate's order, without any restrictions on the court's ability to reach its own conclusions concerning credibility." *Id.* The Twelfth District similarly has concluded that the trial court is "not required to give deference and weight to the magistrate's ruling or its determination regarding [witness] credibility" in civil protection order cases. *Pinkston v. White*, 2019-Ohio-5165, ¶ 32 (12th Dist.). As the Twelfth District noted, the trial court judge is the ultimate factfinder that " 'decides whether the magistrate has properly determined the factual issues and appropriately applied the law, and where the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate.' " *Id.*, quoting *Patridge v. Matthews*, 2001-Ohio-4207 (12th Dist.).

{¶ 48} As Respondent points out, the First District Court of Appeals has cautioned that "where the magistrate makes a factual finding based upon the credibility of the witnesses," a trial court "must be mindful" that the magistrate is in the best position to judge the credibility of the witnesses. *In re S.D.*, 2020-Ohio-3379, ¶ 18 (1st Dist.). The First District further cautioned that "a trial court in a Civ.R. 65.1 proceeding should step lightly when discounting the magistrate's credibility determinations—particularly without additional evidence at its disposal." *Durastanti*, 2020-Ohio-4687, at ¶ 22, citing *In re S.D.* at ¶ 18. At the same time, however, the First District acknowledged that the trial court is not required to "reflexively follow the magistrate's disposition" and that "[t]he trial court is by no means required, in all circumstances, to give deference to the magistrate's factual findings." *Id.* at ¶ 21, 23.

{¶ 49} Respondent also cites *Dietrich v. Dietrich*, 2023-Ohio-4822 (4th Dist.), for

the proposition that Civ.R. 65.1 was not intended to authorize an independent analysis of the issues in the case by the trial court and "that the trial court's pre-objection review of a magistrate judge's decision is limited to a determination that there is no error of law or other defect on the face of the order, after which the court may adopt, modify, or reject the order."  Respondent's Supplemental Brief, p. 5-6.  While *Dietrich* did note that Civ.R. 65.1 does not require the trial court to take additional evidence or hold a rehearing, the court concluded the trial court has the discretion to do so if it chooses.  *Dietrich* at ¶ 59. *Dietrich* also noted that the trial court has discretion whether or not to rely on the magistrate's credibility findings.  *Id.*  Therefore, *Dietrich* does not stand for the proposition that a trial court cannot reject a magistrate's credibility findings.

{¶ 50} Finally, when ruling on a party's objections to its decision to adopt, modify, or reject a magistrate's decision, the trial court must determine whether "an error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order."  Civ.R. 65.1(F)(3)(d)(iii).  As noted above, depending on the nature of the particular objections before it, this may require the trial court to conduct a manifest weight of the evidence analysis.  Such an analysis inherently requires the trial court to look at the credibility of the witnesses who testified at the full hearing.

{¶ 51} Based on the language of Civ.R. 65.1 and the role of magistrates in general, we conclude that the trial court ultimately is not bound by the magistrate's credibility determinations.  Our conclusion is consistent with the long history of allowing trial courts

to conduct their own credibility determinations without deferring to a magistrate. We do not believe the enactment of Civ.R. 65.1 changed this basic proposition of law.

### III. The Visiting Judge Applied an Incorrect Legal Standard

{¶ 52} Petitioner's first assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF PETITIONER-APPELLANT BY DISMISSING THE PROTECTION ORDER IN THAT THE TRIAL COURT REQUIRED "IMMEDIATE AND PRESENT DANGER" TO GRANT A FULL SEXUALLY ORIENTED OFFENSE PROTECTION ORDER.

{¶ 53} Our analysis of Petitioner's first assignment of error begins with a review of R.C. 2903.214(C), which governed her petition for a sexually oriented offense civil protection order. That section provides:

A person may seek relief under this section for the person . . . by filing a petition with the court. The petition shall contain or state all of the following:

(1) An allegation that the respondent is eighteen years of age or older and . . . committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation;

(2) If the petitioner seeks relief in the form of electronic monitoring of the respondent, an allegation that at any time preceding the filing of the

petition the respondent engaged in conduct that would cause a reasonable person to believe that the health, welfare, or safety of the person to be protected was at risk, a description of the nature and extent of that conduct, and an allegation that the respondent presents a continuing danger to the person to be protected;

(3) A request for relief under this section.

{¶ 54} In her petition, Petitioner requested an ex parte protection order and further requested a full hearing even if the ex parte protection order was granted or denied. R.C. 2903.214(D)(1) covers requests for ex parte protection orders and provides, in part:

The court, for good cause shown at the ex parte hearing, may enter any temporary orders, with or without bond, that the court finds necessary for the safety and protection of the person to be protected by the order. Immediate and present danger to the person to be protected by the protection order constitutes good cause for purposes of this section. Immediate and present danger includes, but is not limited to, situations in which the respondent has threatened the person to be protected by the protection order with bodily harm or in which the respondent previously has been convicted of or pleaded guilty to a violation of section 2903.211 of the Revised Code or a sexually oriented offense against the person to be protected by the protection order.

{¶ 55} An ex parte hearing was held before the magistrate on June 23, 2023. At the conclusion of the hearing, the magistrate denied the request for an ex parte order.

The magistrate explained:

> So the purpose of the ex parte order is immanency (sic). Meaning, that if I don't grant an ex parte order, you are at risk of being physically harmed, one way or another. So this incident occurred eight months ago. And so I don't find that there is immanency (sic) because he hasn't spoken to you since, there hasn't been another incident. That does not mean that you're not entitled or should entitled (sic) to a protection order at another date. It's just that for purposes of the ex parte, I don't find that all the elements have been met.

June 23, 2023 Tr. 10.

{¶ 56} Following the August 11, 2023 full hearing, the magistrate issued a decision denying the petition for a civil protection order. Pursuant to Civ.R. 65.1(F)(3)(c)(iii), the trial court rejected the magistrate's decision in its entirety and granted the petition for a civil protection order. Respondent timely filed objections to the trial court's decision pursuant to Civ.R. 65.1(F)(3)(d)(i). At that point, Respondent's burden was to show "that an error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order." Civ.R. 65.1(F)(3)(d)(iii). Ultimately, the visiting judge concluded that the Petitioner (1) had failed to demonstrate an immediate and present danger that Respondent would cause physical harm or mental anguish and (2) had failed to present testimony about the current need for a civil protection order.

Therefore, he dissolved the civil protection order.

{¶ 57} Petitioner contends that the visiting judge erred by requiring her to prove that she was in immediate and present danger in order to obtain a civil protection order under R.C. 2903.214(C).   According to Petitioner, the visiting judge improperly applied a requirement from R.C. 2903.214(D)(1) that only applied to ex parte civil protection orders, not those that are entered after a full hearing.   Further, Petitioner argues that she proved that a continuing danger existed, which is all that was required after she had shown that she was a victim of a sexually oriented offense.   Petitioner's Brief, p. 9, citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997).

{¶ 58} Respondent argues that the visiting judge correctly dissolved the protection order because "there was no evidence of continuing harm, that a future sexual assault or other may occur, or that Petitioner's fear of future harm from Respondent was reasonable."   Respondent's Brief, p. 11.   According to Respondent, "Ohio courts have affirmed the denial of petitions for civil sexually oriented offense protection orders where the court found by a preponderance of the evidence that a sexual assault occurred but there was no threat of future harm."   *Id.* at 12, citing *Tucker v. Uhl*, 2023-Ohio-3680 (12th Dist.); *K.B. v. B.B.*, 2017-Ohio-71 (9th Dist.); *M.H. v. J.H.*, 2015-Ohio-5178 (9th Dist.); and *Wagner v. Holland*, 2016-Ohio-5028 (5th Dist.).   Respondent also argues that Petitioner's claim that she had been sexually assaulted was not supported by the record. Respondent contends that Petitioner's "failure to recall specific events, without a denial that it happened coupled with affirmative evidence from [Respondent] that the event happened, is insufficient to allow the finder of fact to find that sexually oriented offense

occurred." *Id.* at 18. Respondent believes "this Court should not discount the Magistrate Judge's credibility determinations — particularly without the Magistrate Judge's ability to view the demeanor of the witnesses." *Id.* at 17.

**{¶ 59}** We agree with Petitioner that the visiting judge misinterpreted the language of R.C. 2903.214. The plain language of R.C. 2903.214 allows for the granting of a sexually oriented offense civil protection order when a petitioner proves that the respondent is at least 18 years of age and has committed a sexually oriented offense against the petitioner. R.C. 2903.214(C)(1). *Accord L.L.L. v. Junies*, 2014-Ohio-141, ¶ 15 (2d Dist.) (petitioner's testimony was sufficient to establish that respondent had committed a sexually oriented offense; therefore, the trial court did not err in granting a civil protection order under R.C. 2903.214). Despite this, the visiting judge stated that Petitioner was required to also prove that there was an "immediate and present danger" from Respondent. The visiting judge cited R.C. 2903.214(D)(1) for the source of this requirement. He explained:

> It would be a strained reading of R.C. 2903.214 to only require proof of an "immediate and present danger" at the ex parte hearing and then such proof unnecessary at the second hearing. Similarly, it would be a strained reading of these statutes to only require proof of an "immediate and present danger" where there is an allegation of menacing by stalking per R.C. 2903.211 but not for sexually oriented offenses. Such narrow interpretation could not be found in any appellate authority.

Decision (Jan. 25, 2024), p. 7. We do not agree.

{¶ 60} The plain language of R.C. 2903.214(D)(1) makes the requirement of "immediate and present danger" applicable only to ex parte civil protection orders. The General Assembly's decision to require a heightened burden before granting an ex parte protection order is logical given that the respondent is not at the ex parte proceeding and cannot present any evidence or arguments. The added "immediate and present danger" burden at ex parte proceedings helps to protect the due process rights of absent respondents. Such due process concerns are lessened greatly at the full hearing because the respondent is able to present evidence and arguments. Therefore, it is not a "strained" interpretation of R.C. 2903.214(D)(1) to apply it only to ex parte proceedings. On the contrary, it would be a much more strained interpretation to apply the "immediate and present danger" requirement to all civil protection orders when the General Assembly chose to limit it to ex parte protection orders. We note that similar language as that contained in R.C. 2903.214(D)(1) is present in other Ohio statutes providing for civil protection orders in other contexts. Appellate courts addressing this "immediate and present danger" language in these other statutes have confined it to the granting of ex parte civil protection orders. *See, e.g., J.L. v. M.D.*, 2011-Ohio-6208, ¶ 50 (11th Dist.) (R.C. 2151.34(D)(1) "demonstrates that a petitioner must show an 'immediate and present danger' only to obtain the initial ex parte order.").

{¶ 61} We conclude that the visiting judge erred in requiring Petitioner to prove she was in immediate and present danger in order to obtain a sexually oriented offense civil protection order. Therefore, the first assignment of error is sustained.

**IV.     The Matter Will Be Remanded for the Trial Court to Rule on Respondent's Objections**

{¶ 62} Petitioner's second assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF PETITIONER-APPELLANT BY DISMISSING THE FULL PROTECTION ORDER, IN THAT THERE WAS SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD OF A CONTINUING DANGER TO HER.

**A.   The Credibility Findings**

{¶ 63} Viewing R.C. 2903.214(D)(1) in its proper context, the issue becomes whether the visiting judge still correctly determined that there was insufficient evidence to support the granting of a civil protection order under R.C. 2903.214(C).   According to Respondent, we should affirm the visiting judge's decision because Petitioner failed to establish that she was a victim of a sexually oriented offense and failed to establish that there was a threat of future harm.   Petitioner responds that both the trial court and the visiting judge found that she had been a victim of a sexually oriented offense, and the evidence established that Respondent was a continuing danger to her.   Therefore, Petitioner believes the visiting judge erred by dissolving the civil protection order.

{¶ 64} Typically, the trial court judge who adopted, modified, or rejected a

magistrate's decision will be the same judge who will rule on any objections under Civ.R. 65.1(F)(3)(d). But the appeal before us is unique in many ways, including the fact that the trial court judge decided to recuse herself from ruling on Respondent's objections, apparently solely because she was the same judge who issued the decision to which Respondent was objecting. Nothing in Civ.R. 65.1 required such a recusal. After that recusal occurred, however, it was incumbent on the visiting judge to determine whether Respondent had met his burden to show that "an error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting . . . of the protection order." Civ.R. 65.1(F)(3)(d)(iii).

{¶ 65} Respondent argues in his supplemental brief that the trial court, when ruling on his objections, "needed to find not that sufficient evidence existed to support the grant of an order, but that insufficient evidence existed to support the Magistrate Judge['s] denial of the order." Respondent's Supplemental Brief, p. 6, citing *Durastanti*, 2020-Ohio-4687, at ¶ 16. While this is a correct statement of what the First District stated in *Durastanti*, that case had a different procedural history than the current appeal. In *Durastanti*, the trial court initially adopted the magistrate's denial of the request for a civil protection order. Therefore, when ruling on objections to its adoption of the magistrate's denial, the trial court could not sustain the objections unless it found that there was insufficient credible evidence of record to support the original denial of the request for a civil protection order. Civ.R. 65.1(F)(3)(d)(iii). Here, however, the trial court rejected the magistrate's decision and granted a civil protection order. Therefore, when filing its objections, it was Respondent's burden to show that there was insufficient credible

evidence to support the trial court's grant of a civil protection order.

{¶ 66} The visiting judge stated that he "accept[ed]" the trial court's previous findings regarding witness credibility and that he would not "re-consider" the trial court's findings that "sexual conduct occurred between the parties, that the conduct was not consensual and that Petitioner was physically injured." Decision (Jan. 25, 2024), p. 3-4. We generally defer to the trial court on the credibility of witnesses. However, the visiting judge does not appear to have made his own analysis of the credibility of the witnesses or to have carefully considered the trial court's findings of fact regarding witness credibility. Rather, he appears to have limited his decision to concluding that the trial court applied the wrong legal standard when it granted the civil protection order.

{¶ 67} On remand, the judge tasked with ruling on the objections will need to apply the correct legal standard to determine whether Respondent met his burden under Civ.R. 65.1(F)(3)(d)(iii). If he did not, then the objections should be overruled, and the trial court's October 24, 2023 granting of the civil protection order should be reinstated. As part of the analysis on remand, the judge will need to conduct a manifest weight analysis as required by Civ.R. 65.1. Part of that analysis will require the trial court to consider the credibility of the witnesses. *Thompkins*, 78 Ohio St.3d at 387. While the judge assigned to the case on remand may ultimately agree with the trial court's previous findings regarding credibility, the judge should not simply "accept" those findings without doing the proper manifest weight of the evidence analysis.

**B. The Ultimate Issue on Remand**

{¶ 68} The final issue for us in this appeal is what Petitioner was required to prove in order to obtain a sexually oriented offense civil protection order under R.C. 2903.214. Contrary to Petitioner's argument, we do not believe she must show a continuing danger in order to obtain a civil protection order. Notably, the plain language of R.C. 2903.214 does not require Petitioner to prove that there was a "continuing danger" to her or a threat of future sexually oriented offenses in order to procure a sexually oriented offense civil protection order. Indeed, the General Assembly showed that it knew how to add a "continuing danger" requirement to R.C. 2903.214(C) if it had intended to do so. For example, R.C. 2903.214(D)(3)(b) provides for electronic monitoring of a respondent if a petitioner shows, among other things, "that the respondent presents a continuing danger to the person to be protected." [6] The absence of a similar "continuing danger" requirement in R.C. 2903.214(C) is telling.

{¶ 69} Further, our precedent has not required that a petitioner prove a continuing danger element. For example, in *Junies*, 2014-Ohio-141 (2d Dist.), the trial court credited the testimony of petitioner, who testified that the respondent "began to grope and fondle her, ultimately pulling down her pants and underwear despite her protests. Even after she repeatedly refused his sexual advances and asked him to stop, [respondent] forced himself upon [petitioner] and had sexual intercourse with her." *Id.* at ¶ 15. We agreed with the trial court that the petitioner's testimony was sufficient to establish by a preponderance of the evidence that the respondent had committed a sexually oriented offense and accordingly, the trial court properly granted the petition for a sexually oriented

---

[6] Petitioner did not request electronic monitoring in this case and the trial court did not order such monitoring.

offense civil protection order. *Id.* We neither mentioned nor required that a petitioner prove a continuing danger or risk of future sexually oriented offenses.

{¶ 70} The plain language of R.C. 2903.214(C) does not require Petitioner to prove anything other than that Respondent committed a sexually oriented offense against her and that the Respondent was at least 18 years old. We are understandably hesitant to impose additional requirements on Petitioner when the General Assembly chose not to do so. Further, we do not believe the cases cited by Respondent and Petitioner require us to impose additional requirements on petitioners seeking a sexually oriented offense civil protection order pursuant to R.C. 2903.214(C).

{¶ 71} Petitioner cites *Felton v. Felton*, 79 Ohio St.3d 34 (1997), and *In re E.P.*, 2011-Ohio-5829 (8th Dist.), for the proposition that a petitioner must also show "a continuing danger to the petitioner." We do not believe those decisions impose a continuing danger requirement on petitioners seeking a sexually oriented offense civil protection order under R.C. 2903.214(C).

{¶ 72} In *Felton*, the Ohio Supreme Court was tasked solely with determining the appropriate burden of proof to apply to petitioners seeking a civil protection order under Ohio's civil domestic violence statute, R.C. 3113.31. The Court held that "[w]hen granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton* at paragraph two of the syllabus, citing R.C. 3113.31(D). That holding in *Felton* led the Eighth District Court of Appeals to state that a juvenile seeking a protection order under R.C. 2151.34, which is similar to

R.C. 3113.31, must show danger of future harm. *In re E.P.* at ¶ 28-29. Similarly, Petitioner and Respondent have concentrated on this "danger" language in *Felton* to contend that Petitioner must show some evidence that there is a danger of future harm before the trial court may issue a sexually oriented offense civil protection order.

{¶ 73} We do not believe the *Felton* holding, which involved a domestic violence protection order under R.C. 3113.31, controls the present controversy involving a sexually oriented offense civil protection order issued pursuant to R.C. 2903.214(C). In *Felton*, the Court was faced with a situation where the respondent was accused of placing petitioner "by the threat of force in fear of imminent serious physical harm." *Felton* at 43. Further, the domestic violence statute, unlike R.C. 2903.214, states that a court may grant any protection order "to bring about a cessation of domestic violence." R.C. 3113.31(E)(1). Therefore, it made sense for the *Felton* court to state that the petitioner needed to prove that she was in danger of domestic violence. R.C. 2903.214, however, allows a civil protection order to be issued based solely on the fact that a respondent who is at least 18 years old committed a sexually oriented offense.

{¶ 74} Respondent disagrees, citing a number of cases in support of his argument that more than the commission of a sexually oriented offense is required to issue a civil protection order under R.C. 2903.214. According to Respondent, "Ohio courts have affirmed the denial of petitions for civil sexually oriented offense protection orders where the court found by a preponderance of the evidence that a sexual assault occurred but there was no threat of future harm." Respondent's Brief, p. 12, citing *Tucker*, 2023-Ohio-3680 (12th Dist.); *K.B.*, 2017-Ohio-71 (9th Dist.); *M.H.*, 2015-Ohio-5178 (9th Dist.); and

*Wagner*, 2016-Ohio-5028 (5th Dist.). We are not persuaded by Respondent's argument or the authority he cites in support of his argument.

**{¶ 75}** In *Tucker*, the petitioner was a senior at Miami University in Oxford, Ohio, and the respondent was employed as a part-time yoga instructor at the Miami University campus fitness center. The petitioner and respondent had neither seen nor encountered each other before exchanging messages on social media apps Grindr and Snapchat. *Tucker* at ¶ 4. They decided to meet in person. As a result of what happened at that meeting, the petitioner sought a civil protection order based on sexual assault. *Id.* at ¶ 7-9. The magistrate credited petitioner's testimony and found by a preponderance of the evidence that respondent had engaged in conduct described in the sexual imposition statute, which constituted a sexually oriented offense for purposes of R.C. 2903.214(C). However, the magistrate denied the petition for a civil protection order, concluding that there was nothing in the record to indicate the petitioner was in need of any type of protection from the respondent. *Id.* at ¶ 10. The trial court overruled the petitioner's objections to the magistrate's decision.[7] The petitioner appealed.

**{¶ 76}** The Twelfth District Court of Appeals affirmed the trial court's decision. Although the court acknowledged that neither the plain language of R.C. 2903.214(C) nor the case law specifically required a petitioner to show a need for the issuance of the protection order before the order could be granted, the court stated that a sexually oriented offense civil protection order is a special statutory remedy that is designed to

---

[7] It is unclear why there were objections filed to the magistrate's decision rather than to the trial court's adoption, modification, or rejection of the magistrate's decision. *Compare* Civ.R. 53 and Civ.R. 65.1.

prevent future harm to the petitioner before it occurs. *Id.* at ¶ 18. According to the Twelfth District, the goal of the civil stalking protection order and the sexually oriented offense civil protection order "is to allow the police and the courts to act before the petitioner can be harmed by the respondent, rather than to punish the respondent for prior bad acts." *Id.* The court then concluded that there was nothing in the record to indicate the respondent posed any threat to the petitioner because the respondent had been fired from his job at Miami University, he no longer worked on the Miami University campus, and there was nothing in the record that indicated the petitioner was still a student at Miami University or continued to live around the Oxford area. *Id.* at ¶ 19. Therefore, the Twelfth District held that the petitioner had not shown the requisite need for the civil protection order.

{¶ 77} As Petitioner points out, the facts in the case before us are markedly different than the facts before the court in *Tucker*. Petitioner and Respondent were classmates in a small cohort and knew each other before the events of October 28, 2022. After Respondent allegedly committed his sexually oriented offense, both he and Petitioner continued as law students at the same law school in the same, small class cohort. Petitioner also testified that Respondent violated the no contact rule put into place by the University of Dayton and explained why she feared future harm from Respondent and needed a civil protection order to ensure her protection.

{¶ 78} Moreover, we are not persuaded by the authority cited by the *Tucker* court in support of its conclusion that a petitioner needs to prove a threat of another, future sexual offense even though such a requirement is not contained in R.C. 2903.214(C).

The *Tucker* court cited to *R.R. v. J.H.*, 2021-Ohio-706 (8th Dist.). There, the petitioner testified that she went to the respondent's house as a friend, but he forced her to have anal and vaginal sex with him and beat her. The trial court credited the petitioner's testimony and issued both a sexually oriented offense civil protection order and a civil stalking protection order. The Eighth District deferred to the trial court's credibility determinations and concluded that "[t]he evidence presented by [the petitioner] at the hearing was sufficient to establish by a preponderance of the evidence that [the respondent] committed a sexually oriented offense against her, and that a civil protection order *was warranted*." (Emphasis added.) *R.R.* at ¶ 26. The court then spent the rest of its decision affirming the issuance of the separate, civil stalking protection order. The *Tucker* court focused on the words "was warranted" and decided that the Eighth District's use of these words meant the Eighth District had added a requirement of "necessity" in order for a petitioner to successfully obtain a sexually oriented offense civil protection order. We do not believe that was a reasonable interpretation of the Eighth District's decision in *R.R.* At no point did the Eighth District discuss, analyze, or explicitly require any evidence that the protection order "was necessary." Rather, like our decision in *Junies*, 2014-Ohio-141 (2d Dist.), the Eighth District simply required the petitioner to prove the commission of a sexually oriented offense in order to obtain a civil protection order under R.C. 2903.214(C).

{¶ 79} The *Tucker* court also pointed to the language in Sup.R. Form 10.3F, which is used when trial courts issue civil protection orders under R.C. 2903.214(C)(1). Specifically, a box is included on that form, like the one on the October 24, 2023 civil

protection order issued by the trial court in the present case, that states "[t]he Court finds by a preponderance of the evidence that 1) Petitioner or Petitioner's family or household members have been a victim of a sexually oriented offense as defined in R.C. 2950.01 committed by Respondent; and 2) the following orders are equitable, fair, and necessary to protect the persons named in this Order from sexually oriented offenses."   The forms provided in the Ohio Rules of Superintendence cannot override the substantive law contained in R.C. 2903.214(C).   Further, we construe the language "the following orders are equitable, fair, and necessary" as referring to the specific restrictions placed on a respondent within the protective order rather than to whether additional requirements of fairness, equity, and necessity must be met before a protection order may be issued. *See* R.C. 2903.214(E)(1)(a) (noting that the *terms* of the civil protection order should be designed to ensure the safety and protection of the person to be protected by the order).

{¶ 80} Respondent also cites three other cases for the proposition that "Ohio courts have affirmed the denial of petitions for civil sexually oriented offense protection orders where the court found by a preponderance of the evidence that a sexual assault occurred but there was no threat of future harm."   Respondent's Brief, p. 12.   However, none of these cases dealt with petitions for sexually oriented offense civil protection orders. *K.B.*, 2017-Ohio-71 (9th Dist.) (reviewing a domestic violence civil protection order issued pursuant to R.C. 3113.31); *M.H.*, 2015-Ohio-5178 (9th Dist.) (reviewing a domestic violence civil protection order issued pursuant to R.C. 3113.31); and *Wagner*, 2016-Ohio-5028 (5th Dist.) (reviewing the denial of a petition for a civil stalking protection order that required sufficient evidence that the respondent engaged in menacing by

stalking pursuant to R.C. 2903.211).

**{¶ 81}** The second assignment of error is sustained in part and overruled in part. It would not be appropriate for us to grant Petitioner's request to reinstate the civil protection order as a matter of law given that the visiting judge did not rule on all of Respondent's objections and did not consider the credibility of the witnesses when reviewing Respondent's objections. The matter will be remanded to the trial court to rule on Respondent's objections under the appropriate legal standards set forth in this opinion.

## V.     Conclusion

**{¶ 82}** The judgment of the trial court will be reversed, and the cause will be remanded for the trial court to rule on Respondent's objections to the trial court's October 24, 2023 order.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.